**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE RICK H. REYNOLDS,

*Debtor.*

_____

TODD A. FREALY, Attorney, Chapter 7 Trustee of Estate of Rick Reynolds,

*Appellant*,

v.

RICK H. REYNOLDS; JOHN M. CARMACK, Co-Trustee of the Reynolds Family Trust and Co-Trustee of The Reynolds Family Trust - Survivor's Trust, as amended; JOHN MORRIS, Co-Trustee of the Reynolds Family Trust and Co-Trustee of The Reynolds Family Trust - Survivor's Trust, as amended,

*Appellees.*

No. 12-60068

BAP No. 11-1433

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Hollowell, Pappas, and Dunn, Bankruptcy Judges,
Presiding

Argued and Submitted March 7, 2014
Pasadena, California

Filed August 15, 2017

Before: Alex Kozinski and Susan P. Graber, Circuit
Judges, and Charles R. Breyer,[*] District Judge.

Per Curiam Opinion

---

## SUMMARY[**]

### Bankruptcy

The panel reversed a decision of the Bankruptcy Appellate Panel following the California Supreme Court's opinion answering a certified question regarding whether the creditors of the beneficiary of a spendthrift trust may reach the trust distributions.

The panel held that a bankruptcy estate is entitled to the full amount of spendthrift trust distributions due to be paid as of the date of the bankruptcy petition. But the estate may not access any portion of that money the beneficiary needs for his support or education, as long as the trust instrument specifies that the funds are for that purpose. The estate may also reach

---

[*] The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

25 percent of expected future payments from the spendthrift trust, reduced by the amount the beneficiary needs to support himself and his dependents.

## COUNSEL

Jesse S. Finlayson (argued), Finlayson Williams Toffer Roosevelt & Lilly LLP, Irvine, California, for Appellant.

David W. Meadows (argued), Law Offices of David W. Meadows, Los Angeles, California, for Appellees.

## OPINION

PER CURIAM:

Debtor is the beneficiary of a spendthrift trust. The trust payments he receives come entirely from trust principal. The California Probate Code is unclear as to whether and to what extent his creditors may reach the trust distributions, so we certified the question to the California Supreme Court. *Frealy* v. *Reynolds*, 779 F.3d 1028, 1030 (9th Cir. 2015). That court answers us in the attached opinion.

In our order certifying the question, we recounted the facts of this case. *Id.* at 1031–32. Based on the California Supreme Court opinion, we now hold that a bankruptcy estate is entitled to the full amount of spendthrift trust distributions due to be paid as of the petition date. *See Carmack* v. *Reynolds*, 391 P.3d 625, 628 (Cal. 2017); Cal. Prob. Code § 15301(b). But the estate may not access any portion of that money the beneficiary needs for his support or education, as

long as the trust instrument specifies that the funds are for that purpose. *See Carmack*, 391 P.3d at 629; Cal. Prob. Code § 15302. The estate may also reach 25 percent of expected future payments from the spendthrift trust, reduced by the amount the beneficiary needs to support himself and his dependents. *See Carmack*, 391 P.3d at 632; Cal. Prob. Code § 15306.5.

We remand so that the bankruptcy court can apply the teachings of *Carmack*.

**REVERSED** and **REMANDED**.

**APPENDIX**

215 Cal.Rptr.3d 749

**John M. CARMACK, as Trustee, etc., et al., Plaintiffs and Respondents,**

**v.**

**Rick H. REYNOLDS, Defendant;**

**Todd A. Frealy, as Trustee in Bankruptcy, etc., Claimant and Appellant.**

S224985

Supreme Court of California.

Filed 3/23/2017

**Background:** Chapter 7 trustee brought adversary proceeding, seeking to compel turnover of the undistributed principal to which debtor was entitled under spendthrift trust established by his late father. The United States Bankruptcy Court for the Central District of California, Meredith A. Jury, J., granted debtor's motion for summary judgment, and trustee appealed. The Bankruptcy Appellate Panel (BAP), Hollowell, J., 479 B.R. 67, affirmed, and trustee appealed, and the Court of Appeals, 2017 WL 1131882, certified question to the California Supreme Court as to the extent to which a bankruptcy estate may reach a beneficiary's interest in spendthrift trust.

**Holding:** The Supreme Court, Liu, J., held that creditor may petition for pending distribution of principal as well as up to 25 percent of future payments.

Question answered.

**1. Trusts ⬤141**

A "spendthrift trust" is a trust that provides that the beneficiary's interest cannot be alienated before it is distributed to the beneficiary.

> See publication Words and Phrases for other judicial constructions and definitions.

**2. Trusts ⬤152**

Creditors of the beneficiary of a spendthrift trust generally cannot reach trust assets while those assets are in the hands of the trustee, even if they have secured a judgment against the beneficiary; rather, creditors must wait until the trustee makes distributions to the beneficiary.

**3. Trusts ⬤12**

The law permits spendthrift trusts because donors have the right to choose the object of their bounty and to protect their gifts from the donees' creditors.

**4. Statutes ⬤1076**

Court interpreting a statute seeks to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.

**5. Statutes ⬤1079**

Court interpreting a statute begins by looking to the statutory language.

**6. Statutes ⬤1091, 1151**

Court interpreting a statute must give the language its usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.

**7. Statutes ⬤1156**

A construction of a statute making some words surplusage is to be avoided.

**8. Statutes ⬤1153, 1155, 1216(2)**

The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.

**9. Statutes ⬤1105, 1183, 1242**

If the statutory language is susceptible of more than one reasonable interpretation, court must look to additional canons of statutory construction to determine the Legislature's purpose; both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.

**10. Trusts ⬤152**

The general rule is that principal held in a spendthrift trust may not be touched by creditors until it is paid to the beneficiary. Cal. Prob. Code § 15301(a).

**11. Trusts ⇒152**

Where trust assets are not protected by a spendthrift provision, the default rule is that creditors may reach those assets. Cal. Civ. Proc. Code § 709.010(b).

**12. Trusts ⇒152**

After an amount of principal of a spendthrift trust has become due and payable, but has not yet been distributed, a creditor can petition to have the trustee pay directly to the creditor a sum up to the full amount of that distribution unless the trust instrument specifies that the distribution is for the beneficiary's support or education and the beneficiary needs the distribution for those purposes; if no such distribution is pending or if the distribution is not adequate to satisfy a judgment, a general creditor can petition to levy up to 25 percent of the payments expected to be made to the beneficiary, reduced by the amount other creditors have already obtained and subject to the support needs of the beneficiary and any dependents. Cal. Prob. Code §§ 15301(b), 15306.5, 15307.

*See 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 151 et seq.*

9th Cir. No. 12-60068, BAP No. CC-11-1433-HPaD, C.D. Cal. Bankr. Nos. 09-14039-MJ, 09-01205-MJ

Finlayson Toffer Roosevelt & Lilly, Jesse S. Finlayson and Matthew E. Lilly, Irvine, for Claimant and Appellant.

Law Offices of David W. Meadows and David W. Meadows, Los Angeles, for Defendant.

The Eroen Law Firm and Robert C. Eroen for Plaintiffs and Respondents.

Liu, J.

Under the terms of a spendthrift trust established by his parents, defendant Rick H. Reynolds is entitled to receive over a million dollars, all to be paid out of trust principal. Reynolds filed for bankruptcy before the trust's first payment, and the bankruptcy trustee seeks to determine what interest the bankruptcy estate has in the trust. The trust is governed by California law, and as the United States Court of Appeals for the Ninth Circuit observed, the relevant statutory provisions are "opaque." (*Frealy v. Reynolds* (9th Cir. 2015) 779 F.3d 1028, 1029 (*Frealy*).) Probate Code section 15306.5 appears to limit the bankruptcy estate to 25 percent of the beneficiary's interest; other provisions of the Probate Code suggest no such limitation. The Ninth Circuit asked us whether the Probate Code limits a bankruptcy estate's access to a spendthrift trust to 25 percent of the beneficiary's interest, where the trust pays the beneficiary entirely out of principal. We hold that the Probate Code does not impose such an absolute limit on a general creditor's access to the trust. With limited exceptions for distributions explicitly intended or actually required for the beneficiary's support, a general creditor may reach a sum up to the full amount of any distributions that are currently due and payable to the beneficiary even though they are still in the trustee's hands, and separately may reach a sum up to 25 percent of any payments that are anticipated to be made to the beneficiary.

## I.

Reynolds's parents established the Reynolds Family Trust in 2005. The trust contains a spendthrift clause, providing that "no interest in the income or principal of any trust created under this instrument shall be voluntarily or involuntarily anticipated, assigned, encumbered, or subjected to creditor's [*sic*] claim or legal process before actual receipt by the beneficiary." Reynolds's mother Patsy died in 2007. Following her death, Reynolds's father Freddie received all the trust's distributions until Freddie died in 2009.

The trust provides that at Freddie's death, Reynolds is entitled to $250,000 from the trust if he survives Freddie by 30 days. In addition, Reynolds is entitled to receive $100,000 a year for 10 years and then one-third of the remainder. All payments are expected to be made from principal; the trust's assets are in undeveloped real estate that do not produce income. Those assets are estimated to be worth several million dollars, although their exact value will not be known until the trust assets are liquidated.

The day after his father died, Reynolds filed for voluntary bankruptcy under chapter

7 of the United States Bankruptcy Code. The trustees of the Reynolds Family Trust sought a declaratory judgment on the extent of the bankruptcy trustee's interest in the trust. The bankruptcy court held that under the California Probate Code, the bankruptcy trustee standing as a hypothetical lien creditor could reach 25 percent of Reynolds's interest in the trust. The bankruptcy appellate panel affirmed. The bankruptcy trustee appealed to the Ninth Circuit, which asked us to clarify if Probate Code section 15306.5 caps a bankruptcy estate's access to a spendthrift trust at 25 percent of the beneficiary's interest where the trust pays entirely from principal. We granted the Ninth Circuit's request.

## II.

**[1–3]** A spendthrift trust is a trust that provides that the beneficiary's interest cannot be alienated before it is distributed to the beneficiary. Creditors of the beneficiary generally cannot reach trust assets while those assets are in the hands of the trustee, even if they have secured a judgment against the beneficiary. Rather, creditors must wait until the trustee makes distributions to the beneficiary. The law permits such trusts because donors have "the right to choose the object of [their] bounty" and to protect their gifts from the donees' creditors. (*Canfield v. Security-First Nat. Bank* (1939) 13 Cal.2d 1, 11, 87 P.2d 830 (*Canfield*).) Providing donors some measure of control over their gifts encourages donors to make those gifts, to the benefit of the donor, the beneficiary, and ultimately the beneficiary's creditors.

Under the Probate Code, spendthrift provisions are generally valid as to both trust income and trust principal. (Prob. Code, §§ 15300 [trust income], 15301, subd. (a) [trust principal]; all statutory references are to the Probate Code unless otherwise noted.) Yet creditors need not always wait for distributions to reach the debtor's hands. Spendthrift provisions are invalid when grantors name themselves beneficiaries. (§ 15304, subd. (a).) When a trust includes a valid spendthrift provision, certain creditors may reach into the trust. Such creditors include those with claims for spousal or child support

(§ 15305) and those with restitution judgments (§ 15305.5). In addition, a state or local public entity can reach trust assets when the beneficiary owes money for public support (§ 15306, subd. (a)) unless distributions from the trust are required to care for a disabled beneficiary (§ 15306, subd. (b)).

Even general creditors, including a bankruptcy trustee standing as a hypothetical lien creditor, have some recourse under three provisions: section 15301, subdivision (b) (section 15301(b)), section 15306.5, and section 15307. The question here is how much access to trust principal a general creditor has under these provisions.

**[4–9]** This is a question of statutory construction. We seek to "ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272, 105 Cal.Rptr.2d 457, 19 P.3d 1196.) "[W]e begin by looking to the statutory language. [Citation.] We must give 'the language its usual, ordinary import and accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' [Citation.] If the statutory language is susceptible of more than one reasonable interpretation, we must look to additional canons of statutory construction to determine the Legislature's purpose. [Citation.] 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.'" (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110, 105 Cal.Rptr.3d 404, 225 P.3d 538.)

In construing the provisions at issue, we are mindful that the Reynolds Family Trust is distinctive in directing all disbursements to be made from principal. In other trusts, productive assets produce periodic income payments during the life of the trust, and preserving principal is one of the trustee's paramount duties. (See 76 Am.Jur.2d (2016)

Trusts, § 429.) It is common for trusts to specify that the principal may not be distributed for many years, and liquidating principal may signal that the trust's purpose has been fulfilled. We are also mindful that this case arises out of a bankruptcy proceeding. Ordinarily, a judgment creditor who is unable to satisfy all of the judgment out of the beneficiary's trust interest may continue to attempt to collect on the balance of the judgment from whatever other assets the beneficiary may have. Here, however, the amount Reynolds's creditors will receive depends on the reach of the bankruptcy trustee. Any remaining debts after the bankruptcy process will be extinguished, and any further distributions will be unencumbered. (11 U.S.C. § 541(c)(2).) That spendthrift provisions can work to beneficiaries' advantage in bankruptcy in this way has long been recognized as a characteristic of such provisions. (See Rest.3d Trusts, § 58, com. a ["An important byproduct of the limited spendthrift protection, however, is the again limited but nevertheless important insulation that may result from a discharge in bankruptcy."].)

### A.

We begin with section 15301(b), which provides in pertinent part: "After an amount of principal has become due and payable to the beneficiary under the trust instrument, upon petition to the court under Section 709.010 of the Code of Civil Procedure by a judgment creditor, the court may make an order directing the trustee to satisfy the money judgment out of that principal amount." Section 709.010 of the Code of Civil Procedure (section 709.010) sets forth the procedure for a judgment creditor to petition a court to satisfy the judgment out of the debtor's trust interests.

As the Ninth Circuit observed, the statute does not define "due and payable." (*Frealy*, *supra*, 779 F.3d at p. 1033.) The phrase is used in other provisions such as section 15305, which provides that creditors with judgments for child or spousal support may petition a court to satisfy their judgments out of disbursements of either income or principal "as they become due and payable, presently or in the future." (§ 15305, subd. (b).)

Any disbursement from the trust would appear to be due and payable in the sense the phrase is used in section 15305. But, as the Ninth Circuit recognized, applying such a reading to section 15301(b) could mean that creditors have "immediate access to all of a beneficiary's trust principal," which would eliminate spendthrift protections as to principal entirely. (*Frealy*, at p. 1033.)

We do not think the Legislature intended to remove all protections from trust principal immediately after specifying that spendthrift provisions are generally valid as applied to principal. (§ 15301, subd. (a).) Instead, the Legislature provided the limiting principle in the introductory clause of section 15301(b): "*After* an amount of principal *has become* due and payable...." (Italics added.) This clause indicates that timing is critical: section 15301(b) reaches only those amounts which are presently set to be paid to the beneficiary. The provision thus requires an amount of principal to "ha[ve] become" due to the beneficiary, at which point upon a creditor's petition the court may enter an order "directing the trustee to satisfy the money judgment out of *that principal amount*." (§ 15301(b), italics added.) In other words, under this provision creditors may reach the principal already set to be distributed and only up to the extent of that distribution. Such principal has served its trust purposes, and in many (but not all) cases, the distribution may signal that the trust is ending. Section 15301(b) makes these assets, and these assets only, fair game to creditors.

[10] In this light, section 15301(b) is properly viewed not as an exception to the general spendthrift protections but as a corollary. The general rule is that principal held in a spendthrift trust may not be touched by creditors until it is paid to the beneficiary. (§ 15301, subd. (a).) Section 15301(b) adds that once an amount of principal has become due and payable, the court can order the trustee to pay that amount directly to the beneficiary's creditors instead. A distribution of principal is reasonably understood to signify that the amount distributed has satisfied its trust purposes. Because the beneficiary's interest in those assets has effectively vested, the law no longer has any interest in protect-

ing them (except as provided in section 15302, as explained below).

The legislative history points the same way. The provisions at issue date from the Law Revision Commission's 1986 proposed revisions to the Probate Code. (See Selected 1986 Trust and Probate Legislation (Sep. 1986) 18 Cal. Law Revision Com. Rep. (1986) pp. 1321–1479 (1986 Report); Stats. 1986, ch. 820, § 40, as reenacted by Stats 1990, ch. 79, § 14.) The revisions were designed to remedy the patchwork nature of the prior statutory framework while largely continuing existing law. (1986 Report, *supra*, at pp. 1221–1222, 1302–1306.) Prior California statutes had not made clear that spendthrift provisions were valid as applied to principal, though case law generally suggested they were. (*Id.* at p. 1302; see *Seymour v. McAvoy* (1898) 121 Cal. 438, 444, 53 P. 946; *San Diego Trust etc. Bank v. Heustis* (1932) 121 Cal. App. 675, 683–684, 10 P.2d 158.) The Commission's report, to which we give "substantial weight" (*Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245, 249, 66 Cal.Rptr. 20, 437 P.2d 508, overruled on other grounds in *Privette v. Superior Court* (1993) 5 Cal.4th 689, 21 Cal. Rptr.2d 72, 854 P.2d 721), notes that the drafters sought to codify the validity of spendthrift provisions as applied to trust principal in section 15301, subdivision (a) (section 15301(a)). (1986 Report, *supra*, at p. 1302.) But the drafters also sought to clarify that once principal was due and payable, creditors could reach it both "in the hands of the trustee and after payment to the beneficiary." (*Id.* at pp. 1302–1303.) In other words, spendthrift protections do not apply to section 15301(b) assets.

Importantly, creditors' access under section 15301(b) is not unlimited. Section 15302 explains that where the trust instrument specifies that a distribution, whether from income or principal, is for the beneficiary's support or education, the amount the beneficiary actually needs for either purpose may not be reached by creditors until in the hands of the beneficiary. Section 15302 explicitly provides that it does not apply where creditors seek access under sections 15304 through 15307, but section 15302 does not exclude orders under section 15301(b). Section 15302 thus provides limited continued protection to former trust assets where the donor specifically intended the distribution to support the beneficiary. This protection encourages donors to provide for beneficiaries' support and helps to prevent beneficiaries from becoming public charges. (See *Canfield*, *supra*, 13 Cal.2d at p. 11, 87 P.2d 830.)

**B.**

We now turn to sections 15306.5 and 15307. Both provisions are exceptions to the general validity of spendthrift provisions as applied to trust principal established by section 15301(a). Section 15306.5, subdivision (a) (section 15306.5(a)) provides that any judgment creditor can petition a court to order the trustee to satisfy the judgment out of payments to which the beneficiary is entitled. But those orders are limited to "25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary" (§ 15306.5, subd. (b)), and they cannot cut into any amount required to support the beneficiary or the beneficiary's dependents (§ 15306.5, subd. (c)). Section 15307, for its part, provides: "Notwithstanding a restraint on transfer of a beneficiary's interest in the trust under Section 15300 or 15301, any amount to which the beneficiary is entitled under the trust instrument . . . in excess of the amount that is or will be necessary for the education and support of the beneficiary may be applied to the satisfaction of a money judgment against the beneficiary. Upon the judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the beneficiary's interest in the trust."

Section 15307 thus appears to allow any creditor to access all of a beneficiary's interest in a spendthrift trust besides what is necessary for the beneficiary's education and support, whereas section 15306.5 limits creditors to only 25 percent of the same interest. How are these two provisions to be reconciled?

One possibility is that section 15307 is only meant to apply to income, not principal. It is true that the Law Revision Commission titled this provision "Income in excess of

amount for education and support subject to creditors' claims." (1986 Report, *supra*, 18 Cal. Law Revision Com. Rep. at p. 1340; see also Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15307, p. 562 (West's Annotated Code) ["Section 15307 permits an ordinary creditor to reach income under limited circumstances."]; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 155 ["Under the Trust Law, surplus income may be reached to satisfy creditors' claims."].) But this title was not part of the official legislative enactments (see Stats. 1986, ch. 820, § 40) and therefore cannot have any bearing on the interpretation of the statute (58 Cal.Jur.3d (2017) Statutes, § 177). Moreover, section 15301(a), which applies only to principal, specifically refers to section 15307, and section 15307 provides that it applies "[n]otwithstanding . . . [section] 15301." Both references would be unnecessary if section 15307 only applied to income. (See also 1986 Report, *supra*, at p. 1305 [§ 15307 applies "notwithstanding a restraint on transfer of income *or principal* in the trust instrument" (italics added) ].) In any event, excluding principal from section 15307 would not resolve the tension between sections 15306.5 and 15307 for income. We thus conclude that section 15307 applies to both income and principal, as its text plainly says.

The bankruptcy trustee suggests that section 15307 serves a different purpose from section 15306.5 by setting a higher bar for creditors than section 15306.5. Under this theory, general creditors have "automatic" access to 25 percent of beneficiaries' trust interest under section 15306.5, with the burden on the beneficiaries to prove that this should be reduced in light of their support needs and those of their dependents. But in exceptional circumstances, the argument goes, general creditors can turn to section 15307 to reach beyond the 25 percent cap if they can show that exceeding the cap would be equitable and would not cut into the beneficiaries' support or education needs.

The bankruptcy trustee's theory might reflect sensible policy and may find some support in the Law Revision Commission's unelaborated comment that section 15307 applies "under limited circumstances." (West's Ann. Prob. Code, *supra*, at p. 562.) However, nothing in the statutes suggests that obtaining an order under section 15307 involves any different burden or standard of proof than obtaining an order under any other section. On the contrary, section 15307 contains the same reference to section 709.010 of the Code of Civil Procedure as does section 15306.5(a). Section 709.010, for its part, does not specify any special burdens or procedures for orders under section 15307. The bankruptcy trustee does not cite any authority in support of its theory.

Instead, the more likely answer is that section 15307 reflects a drafting error. Before the 1986 revisions, spendthrift trusts were governed by three key provisions. The first was former section 867 of the Civil Code, which generally permitted spendthrift provisions as applied to income. (Recommendation Proposing the Trust Law (Dec. 1985) 18 Cal. Law Revision Com. Rep. (1985) p. 596 (1985 Report).) The second provision was former section 859 of the Civil Code, which allowed creditors to reach the " 'surplus' " beyond the beneficiary's education and support in the limited instances where the trust instrument did not specify what to do with accumulating income. (1985 Report, *supra*, at p. 597, fn. 390, quoting Civ. Code, former § 859; see *Estate of Lawrence* (1968) 267 Cal.App.2d 77, 82, 72 Cal.Rptr. 851 [trust provision specifying that " '[a]ll unexpended portions of the net income . . . shall be accumulated, added to, and become a part of the principal' " is valid direction for the accumulation of income].) Moreover, former section 859 said it applied " 'as provided in Section 709.010 of the Code of Civil Procedure,' " the third key provision governing spendthrift trusts. (1985 Report, *supra*, at p. 597, fn. 390.) At the time, former section 709.010 applied by reference the principles of the wage garnishment statute to periodic trust payments, capping payments at 25 percent for general creditors and 50 percent for support creditors. (1985 Report, *supra*, at pp. 597–599, fn. 392, quoting former § 709.010.) So, where former section 859 applied, general creditors were capped at 25 percent of periodic payments to beneficiaries.

The Commission's original proposal reworked those provisions into the current framework. Former section 867 of the Civil Code was the basis for proposed section 15300. (1985 Report, *supra*, 18 Cal. Law Revision Com. Rep. at p. 625.) Former section 859 of the Civil Code formed the basis for proposed section 15307, though section 15307's scope is much broader as it seemingly applies to all trust assets and not just undirected accumulations of income. (See 1985 Report, *supra*, at p. 633.) And although section 15307, like former section 859, retained a reference to section 709.010 of the Code of Civil Procedure, that reference would have been to a much changed provision, for the proposal also contemplated amending former section 709.010 to remove its references to the wage garnishment statute. (1985 Report, *supra*, at p. 766.) Some of the removed provisions were given new homes; for example, the provision giving preferred access to support creditors became proposed section 15305, which also removed the 50 percent cap. (1985 Report, *supra*, at pp. 630–631.) The 25 percent cap that had applied to general creditors was not retained anywhere; if the 1985 proposal had been enacted as written, the new law would have dramatically increased the reach of general creditors.

But the revised draft of the Trust Law in 1986, which was ultimately enacted, included for the first time section 15306.5. (1986 Report, *supra*, 18 Cal. Law Revision Com. Rep. at p. 1339; see Stats. 1986, ch. 820, § 40.) This new section drew on former section 709.010 and the wage garnishment statute to create an explicit 25 percent cap on trust interests comparable to the cap protecting wages. (1986 Report, *supra*, at p. 1339.) In the process, the Commission did not meaningfully revise its proposal for section 15307 (compare 1985 Report, *supra*, 18 Cal. Law Revision Com. Rep. at p. 633, with 1986 Report, *supra*, at p. 1340), nor did the Commission clarify the role of section 15307 in light of section 15306.5. The result is that unlike Civil Code former section 859, which it purportedly replaced, section 15307 refers to a version of section 709.010 that no longer imposes a cap on general creditors, even as it follows a new provision, section 15306.5, that

reestablishes that same cap. In light of this history, we decline to adopt an interpretation of section 15307 that simply undoes the limitations on general creditors that section 15306.5 sets forth in a set of specific and carefully calibrated provisions. We conclude instead that the ultimate enactment of section 15307 without apparent limitations on the reach of general creditors was inadvertent. The Legislature plainly intended general creditors to be limited to 25 percent of distributions from the trust.

**C.**

The final issue we must address is whether the 25 percent limitation of section 15306.5 applies to section 15301(b). Section 15306.5, subdivision (f) (section 15306.5(f)) provides: "Subject to subdivision (d), the aggregate of all orders for satisfaction of money judgments against the beneficiary's interest in the trust may not exceed 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary." Unlike section 15306.5(b)'s reference to "[a]n order under this section," the language of section 15306.5(f)—"all orders for satisfaction of money judgments"—is not limited to orders under section 15306.5. One possibility, therefore, is that section 15306.5(f)'s cap extends to all orders under any provision of the Probate Code.

We need not decide the full reach of the 25 percent cap under 15306.5(f) as this case involves only the scope of sections 15301(b) and 15306.5. Whatever other orders may be subject to section 15306.5(f)'s cap, we conclude that the cap does not apply to orders under section 15301(b). As explained above, section 15306.5 was modeled on the wage garnishment statute then in force (Code Civ. Proc., former § 706.050 et seq., as enacted by Stats. 1982, ch. 1364, § 2) and provides creditors a limited exception to spendthrift protections on the beneficiary's continuing interest in the trust. As the use of the conditional in section 15306.5(f) suggests, "the payment that otherwise *would be* made to" the beneficiary is best understood as referring to ongoing payments the beneficiary stands to receive. (Italics added.) The cap thus operates to limit the sum of orders subject to section

15306.5(f)'s cap to 25 percent of any individual expected distribution.

**[11]** By contrast, section 15301(b) makes clear that spendthrift protections do not apply to distributions of principal that have become due and payable. Where trust assets are not protected by a spendthrift provision, the default rule is that creditors may reach those assets. (See § 709.010, subd. (b).) By crafting a specific rule for this narrow class of assets, the Legislature indicated its intent that those assets be treated differently. (See *Miller v. Superior Court* (1999) 21 Cal.4th 883, 895, 89 Cal.Rptr.2d 834, 986 P.2d 170 [" ' "A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." ' [Citation.]"].) Applying section 15306.5(f)'s cap to section 15301(b) assets would defeat the Legislature's specific intent to treat due and payable principal "in the hands of the trustee" on par with such principal "after payment to the beneficiary." (See 1986 Report, *supra*, 18 Cal. Law Revision Com. Rep. at pp. 1302–1303.)

**[12]** In sum, after an amount of principal has become due and payable (but has not yet been distributed), a creditor can petition to have the trustee pay directly to the creditor a sum up to the full amount of that distribution (§ 15301(b)) unless the trust instrument specifies that the distribution is for the beneficiary's support or education and the beneficiary needs the distribution for those purposes (§ 15302). If no such distribution is pending or if the distribution is not adequate to satisfy a judgment, a general creditor can petition to levy up to 25 percent of the payments expected to be made to the beneficiary, reduced by the amount other creditors have already obtained and subject to the support needs of the beneficiary and any dependents. (§ 15306.5.)

As an illustration, suppose a trust instrument specified that a beneficiary was to receive distributions of principal of $10,000 on March 1 of each year for 10 years. Suppose further that a general creditor had a money judgment of $50,000 against the beneficiary and that the trust distributions are neither specifically intended nor required for the beneficiary's support. On March 1 of the first year, upon the creditor's petition a court could order the trustee to remit the full distribution of $10,000 for that year to the creditor directly if it has not already been paid to the beneficiary, as well as $2,500 from each of the nine anticipated payments (a total of $22,500) as they are paid out. If the creditor were not otherwise able to satisfy the remaining $17,500 balance on the judgment, then on March 1 of the following years, upon the general creditor's petition the court could order the trustee to pay directly to the creditor a sum up to the remainder of that year's principal distribution ($7,500), as the court in its discretion finds appropriate, until the judgment is satisfied.

### CONCLUSION

We conclude that a bankruptcy trustee, standing as a hypothetical judgment creditor, can reach a beneficiary's interest in a trust that pays entirely out of principal in two ways. It may reach up to the full amount of any distributions of principal that are currently due and payable to the beneficiary, unless the trust instrument specifies that those distributions are for the beneficiary's support or education and the beneficiary needs those distributions for either purpose. Separately, the bankruptcy trustee can reach up to 25 percent of any anticipated payments made to, or for the benefit of, the beneficiary, reduced to the extent necessary by the support needs of the beneficiary and any dependents.

We Concur:

Cantil-Sakauye, C.J.

Werdegar, J.

Chin, J.

Corrigan, J.

Cuéllar, J.

Kruger, J.

