Filed 8/15/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAYMOND BLECH et al., | B288074 |
| Plaintiffs and Respondents, | Los Angeles County |
| v. | Super. Ct. No. BP135753 |
| RICHARD BLECH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lesley C. Green, Judge. Affirmed.

Law Office of Adam L. Streltzer, Adam L. Streltzer and Darius Anthony Vosylius for Defendant and Appellant.

Keystone Law Group, Shawn S. Kerendian and Lindsey F. Munyer for Plaintiff and Respondent Raymond Blech.

Wolf, Rifkin, Shapiro, Schulman & Rabkin and Christopher J. Heck for Plaintiffs and Respondents Robert Bleck and Linda Sue Grear.

Tantalo & Adler and Michael S. Adler for Plaintiff and Respondent WGC Sports, LLC.

# INTRODUCTION

Although a judgment creditor may generally attempt to enforce a money judgment against most assets of a debtor, such a creditor may not reach a debtor's interest in a trust if the trust includes a spendthrift provision. In that event, the creditor must obtain an order under Probate Code[1] section 15301, subdivision (b) (section 15301(b)), instructing the trustee to pay the creditor once a trust disbursement is due and payable to the debtor. Related sections of the Probate Code provide additional creditor remedies and protections for trust beneficiaries.

Richard Blech[2] is the beneficiary of a spendthrift trust created by his father. The trust provides, among other things, for annual distributions of trust principal over the course of 10 years. Four of Richard's judgment creditors (three of his siblings and an unrelated company) obtained an order from the probate court under section 15301(b), directing the trustee to pay a portion of Richard's 2018 principal disbursement to the creditors in partial satisfaction of their money judgments. Richard appeals.

Richard asserts four arguments in this appeal. First, he contends the court should not have considered the creditors' petitions because they were filed before his principal disbursement was due and payable. We conclude section 15301(b) permits the procedure used in this case. Second, Richard argues the court improperly directed the trustee to withhold Richard's January 2018 disbursement until after the court issued its final

---

[1] All undesignated statutory references are to the Probate Code.

[2] We refer to the family members by their first names in the interest of clarity.

order on the creditors' petitions. We conclude the court acted within the broad scope of its equitable authority. Third, Richard claims the court erred when it declined to rule from the bench (before his disbursement was due and payable) and instead issued a written ruling a few days later (after the disbursement was due and payable). We see no error in the court's approach. And fourth, Richard contends the trust required the trustee to make all payments directly to him, in contravention of section 15301(b). The trust does not so provide. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1.   Arthur's Estate Plan

Arthur Blech died in 2011, leaving behind a substantial legacy for his four adult children, Raymond Blech, Robert Bleck,[3] Richard Blech, and Linda Sue Grear (also known as Jenifer Rush). Arthur's estate plan consisted of the Arthur Blech Living Trust and a will providing that certain of Arthur's assets would be poured over into the trust upon his death. The trust became irrevocable after Arthur died and, pursuant to its terms, was divided among the children into four unequal shares, to be held in trust for 10 years.[4] The trust provides for quarterly distributions of income and annual distributions of principal.

Two specific provisions of the trust are of interest here. First, the trust requires the trustee to distribute trust principal annually to each of the four children for 10 years. The trustee is

---

[3] Robert was born "Robert Blech" but changed his name to "Robert Bleck."

[4] Raymond received 35 percent, Linda received 15 percent, and Richard and Robert each received 25 percent.

3

given no discretion in this regard, as the trust provides in paragraph 5.7:

"The following fractional shares of principal after retention of reasonable reserves shall be distributed to each beneficiary out of such beneficiary's share:

"(a)  One-tenth (1/10) one (1) year after Grantor's death.
"(b)  One-ninth (1/9) two (2) years after Grantor's death.
"(c)  One-eighth (1/8) three (3) years after Grantor's death.
"(d)  One-seventh (1/7) four (4) years after Grantor's death.
"(e)  One-sixth (1/6) five (5) years after Grantor's death.
"(f)  One-fifth (1/5) six (6) years after Grantor's death.
"(g)  One-fourth (1/4) seven (7) years after Grantor's death.
"(h)  One-third (1/3) eight (8) years after Grantor's death.
"(i)  One-half (1/2) nine (9) years after Grantor's death.
"(j)  The balance ten (10) years after Grantor's death."

Second, the trust contains a spendthrift provision designed to protect trust assets from the reach of the beneficiaries' creditors. Specifically, paragraph 10.1 of the trust provides:

"No interest of any Beneficiary of any Trust created in this Trust Agreement shall be subject to sale, assignment, hypothecation or transfer nor shall the principal of any Trust or the income arising therefrom, be liable for any debt of any Beneficiary or be subject to attachment by or the interference by or control of any creditor of any Beneficiary or be taken or reached by any legal or equitable process in satisfaction of any debt or liability of any Beneficiary, including, without limitation, the process of any court in aid of execution of judgment so rendered. All of the income and principal under any Trust shall be transferable, payable and deliverable only to the designated Beneficiary at the time the Beneficiary is entitled to take under

4

the terms of this Trust. The personal receipt of the Beneficiary may be made a condition precedent to the payment or delivery by the Trustee to that Beneficiary. The Trustee may, however, deposit in any bank designated in writing by a Beneficiary, to his or her credit, income or principal payable to that Beneficiary. This Article shall not restrict any authority of the Trustee to use and disburse funds for the support, maintenance, health and education of a Beneficiary, or to disburse funds to a guardian or conservator as herein provided."

Comerica Bank is the current trustee.

## 2. Money Judgments Against Richard

After their father died, the siblings had several disputes amongst themselves that eventually resulted in litigation. As pertinent here, Raymond, Robert, and Linda entered into a settlement agreement with Richard in 2014, in which Richard agreed to pay from his share of the trust $139,950 to Linda, $93,405 to Robert, and $617,000 to Raymond. The payments were to be made no later than November 15, 2015.

In 2016, after Richard failed to comply with the settlement agreement, the three sibling creditors moved to enforce the settlement agreement and obtained judgments in their favor for the amounts owed under the settlement agreement as well as interest, attorney's fees, and costs relating to the enforcement proceeding.

In January 2017, an unrelated entity, WGC Sports, LLC, obtained a money judgment against Richard in the amount of $560,311.

## 3. Petitions to Enforce the Judgments

After entry of their respective judgments against Richard, the sibling creditors filed petitions to enforce their money judgments under Code of Civil Procedure section 709.010. In December 2016, the court ordered the trustee (under section 15306.5) to pay 25 percent of Richard's future trust distributions to the sibling creditors until their judgments were satisfied.

In March 2017, the California Supreme Court decided *Carmack v. Reynolds* (2017) 2 Cal.5th 844 (*Carmack*), a case clarifying a creditor's ability to reach amounts due and payable to a trust beneficiary while those funds are still in the hands of a trustee. Seeking to take advantage of that decision, in late 2017, Raymond, Robert, Linda, and WGC Sports, LLC (collectively, creditors) filed petitions to enforce their money judgments under section 15301(b). The creditors sought an order directing the trustee to use the unencumbered portion of Richard's mandatory January 2018 principal distribution (i.e., the 75 percent unaffected by the court's 2016 order) to pay down their money judgments.

The court heard the petitions together on January 10, 2018, shortly before the trustee was required to make the annual distributions of principal from the trust.[5] At that time, the creditors advised the court that they had stipulated to the relative priority of their money judgments and to the division of any funds the court ordered the trustee to use to pay Richard's

---

[5] Under the terms of the trust, principal distributions are due and payable on the anniversary of Arthur's death: January 13. Because that date fell on a weekend in 2018, the trustee planned to make the distribution the day after the hearing, on January 11.

debts. Richard opposed the petitions, arguing that because no amount was "due and payable" on January 10, the creditors' petitions were premature and, in any event, the court lacked the authority to make any order regarding a future distribution of principal. Richard also claimed the trust was a "support trust" within the meaning of the Probate Code and that the court would need to conduct a future hearing to determine what percentage of Richard's future distributions were needed for the support, maintenance, and health of Richard and his dependents.

Although Richard insisted that the court issue a ruling from the bench, the court did not do so. Instead, the court authorized the trustee to disburse, as scheduled, the 25 percent of Richard's annual principal distribution subject to the court's 2016 order but ordered the trustee to retain the remaining 75 percent of the distribution until the court issued its final ruling.

### 4. The Court's Order and the Appeal

The court issued its final written ruling granting the creditors' petitions on January 19, 2018. Richard timely appeals.

## DISCUSSION

### 1. A judgment creditor may file a petition under section 15301(b) before a debtor/trust beneficiary's trust distribution is "due and payable."

Richard's primary assertion is that the court erred in entertaining the petitions brought by the creditors because those petitions were premature. Specifically, Richard claims that a creditor may not *file* a petition to enforce a money judgment under section 15301(b) until after a disbursement is due and payable to a trust beneficiary. We reject this interpretation of the statute.

7

### 1.1. Standard of Review

Because our analysis turns on our interpretation of section 15301(b), our review is de novo and governed by well-established principles of statutory construction.

"We seek to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] '[W]e begin by looking to the statutory language. [Citation.] We must give "the language its usual, ordinary import and accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." [Citation.] If the statutory language is susceptible of more than one reasonable interpretation, we must look to additional canons of statutory construction to determine the Legislature's purpose. [Citation.] "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' [Citation.]" (*Carmack*, *supra*, 2 Cal.5th at pp. 849–850.)

### 1.2. Analysis

It has long been recognized that where, as here, a trust instrument provides that a beneficiary's interest is not subject to voluntary or involuntary transfer (i.e., is a spendthrift trust), the interest is not generally subject to enforcement of a money judgment until payment is made to the beneficiary. (§§ 15300 [interest in trust income "not subject to enforcement of a money judgment until paid to the beneficiary"]; 15301 [same, as to

beneficiary's interest in trust principal]; see *Kelly v. Kelly* (1938) 11 Cal.2d 356, 363–364 [although spendthrift trust beneficiary could not assign trust interest to judgment creditor, creditor could obtain judgment against beneficiary and levy upon his property, including property received from the trust].) Under the Probate Code, only a few categories of creditors may reach a beneficiary's interest in trust principal before it is paid, notwithstanding a spendthrift provision. "Such creditors include those with claims for spousal or child support (§ 15305) and those with restitution judgments (§ 15305.5). In addition, a state or local public entity can reach trust assets when the beneficiary owes money for public support (§ 15306, subd. (a)) unless distributions from the trust are required to care for a disabled beneficiary (§ 15306, subd. (b))." (*Carmack, supra*, 2 Cal.5th at p. 849.)

General creditors, such as the creditors here, have more limited remedies with respect to a debtor's interest in a trust containing a spendthrift provision. For example, section 15306.5 provides, in pertinent part:

"(a) Notwithstanding a restraint on transfer of the beneficiary's interest in the trust under Section 15300 or 15301, and subject to the limitations of this section, upon a judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the payments to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary.

"(b) An order under this section may not require that the trustee pay in satisfaction of the judgment an amount exceeding

9

25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary.

"(c) An order under this section may not require that the trustee pay in satisfaction of the judgment any amount that the court determines is necessary for the support of the beneficiary and all the persons the beneficiary is required to support.

"(d) An order for satisfaction of a support judgment, as defined in Section 15305, has priority over an order to satisfy a judgment under this section. Any amount ordered to be applied to the satisfaction of a judgment under this section shall be reduced by the amount of an order for satisfaction of a support judgment under Section 15305, regardless of whether the order for satisfaction of the support judgment was made before or after the order under this section.

[¶] … [¶]

"(f) Subject to subdivision (d), the aggregate of all orders for satisfaction of money judgments against the beneficiary's interest in the trust may not exceed 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary."

Under this section, then, a general creditor may obtain a court order directing the trustee to pay up to 25 percent of a beneficiary's future trust distributions directly to the creditor until that creditor's money judgment is satisfied. But even that limited reach is further restricted by subdivision (c), which protects amounts needed for the support of the beneficiary and his or her dependents. And under subdivision (f), if multiple creditors seek to reach the beneficiary's interest in future distributions, all the creditors combined may only reach 25 percent of those distributions. Here, as noted, the three sibling creditors obtained such an order in 2016.

10

In 2017, the California Supreme Court clarified the point at which a general creditor may reach the remaining portion of a beneficiary's trust disbursements, i.e., the 75 percent of future payments not reachable under section 15306.5. (*Carmack, supra*, 2 Cal.5th 844.) As relevant here, the court focused on section 15301(b), which provides in pertinent part: "After an amount of principal has become due and payable to the beneficiary under the trust instrument, upon petition to the court under Section 709.010 of the Code of Civil Procedure[6] by a judgment creditor, the court may make an order directing the trustee to satisfy the money judgment out of that principal amount." Construing that provision, the court held that "under this provision, creditors may reach the principal already set to be distributed and only up to the extent of that distribution. Such principal has served its trust purposes … . Section 15301(b) makes these assets, and these assets only, fair game to creditors." (*Carmack,* at p. 851.)

The court elaborated:

"The general rule is that principal held in a spendthrift trust may not be touched by creditors until it is paid to the beneficiary. (§ 15301, subd. (a).) Section 15301(b) adds that once an amount has become due and payable, the court can order the trustee to pay that amount directly to the beneficiary's creditors instead. A distribution of principal is reasonably understood to signify that the amount distributed has satisfied its trust purposes. Because the beneficiary's interest in those assets has

---

[6] Section 709.010 of the Code of Civil Procedure (section 709.010) sets forth the procedure for a judgment creditor to petition a court to satisfy the judgment out of the debtor's trust interests.

11

effectively vested, the law no longer has any interest in protecting them (except as provided in § 15302 … ).” (*Carmack*, *supra*, 2 Cal.5th at p. 851.)

Here, as already noted, the trustee was required to disburse Richard's annual principal payment on or about January 13, 2018. And the court, citing both *Carmack* and section 15301(b), made its order on January 19, 2018, after the disbursement was due and payable to Richard.

Richard contends, however, that the court erred by considering the creditors' petitions on January 10, 2018—before the principal disbursement was due and payable. In his view, section 15301(b) bars a creditor from *filing* a petition to enforce a judgment before a trust distribution is due and payable. The plain language of the statute does not support Richard's interpretation. Section 15301(b) says: “After an amount of principal has become due and payable to the beneficiary under the trust instrument, upon petition to the court under Section 709.010 of the Code of Civil Procedure by a judgment creditor, the court may make an order directing the trustee to satisfy the money judgment out of that principal amount. The court in its discretion may issue an order directing the trustee to satisfy all or part of the judgment out of that principal amount.” The clause “after an amount of principal has become due and payable” is an adverbial phrase that modifies the verb “make,” i.e., it specifies the time at which the court may act. Similarly, the phrase “upon petition to the court under Section 709.010 of the Code of Civil Procedure by a judgment creditor” also modifies “make,” and is an adverbial phrase defining the manner in which the court may act, i.e., in response to a petition by a creditor under the specified code section.

12

Under Richard's construction, the first phrase ("after an amount has become due and payable") would modify both the second adverbial phrase ("upon petition to the court" etc.) and the verb "make," a construction that is both cumbersome and nonsensical in practical terms. The final sentence of section 15301(b) indicates the court may order the trustee to make a payment directly to a creditor. But as the court noted in this case, if a creditor could not even *file* a petition to enforce a judgment until after a trust distribution is due and payable, it would be virtually impossible for the court to take any action before the trustee would be required by the terms of the trust to disburse the payment. In other words, Richard's strained interpretation would effectively deprive judgment creditors of the relief the Legislature specifically sought to provide. (*Carmack, supra*, 2 Cal.5th at p. 852 [noting the drafters of section 15301(b) "sought to clarify that once principal was due and payable, creditors could reach it both 'in the hands of the trustee and after payment to the beneficiary' "].)

Ignoring the plain meaning of the statute, Richard urges that *Carmack* supports his view and cites an example provided by the court which appears, on its face, to support Richard's position. At the end of its decision, the court summarized its opinion:

"In sum, after an amount of principal has become due and payable (but has not yet been distributed), a creditor can petition to have the trustee pay directly to the creditor a sum up to the full amount of that distribution (§ 15301(b)) unless the trust instrument specifies that the distribution is for the beneficiary's support or education and the beneficiary needs the distribution for those purposes (§ 15302). If no such distribution is pending or

if the distribution is not adequate to satisfy a judgment, a general creditor can petition to levy up to 25 percent of the payments expected to be made to the beneficiary, reduced by the amount other creditors have already obtained and subject to the support needs of the beneficiary and any dependents. (§ 15306.5.)

"As an illustration, suppose a trust instrument specified that a beneficiary was to receive distributions of principal of $10,000 on March 1 of each year for 10 years. Suppose further that a general creditor had a money judgment of $50,000 against the beneficiary and that the trust distributions are neither specifically intended nor required for the beneficiary's support. On March 1 of the first year, upon the creditor's petition a court could order the trustee to remit the full distribution of $10,000 for that year to the creditor directly if it has not already been paid to the beneficiary, as well as $2,500 from each of the nine anticipated payments (a total of $22,500) as they are paid out. If the creditor were not otherwise able to satisfy the remaining $17,500 balance on the judgment, then on March 1 of the following years, upon the general creditor's petition the court could order the trustee to pay directly to the creditor a sum up to the remainder of that year's principal distribution ($7,500), as the court in its discretion finds appropriate, until the judgment is satisfied." (*Carmack, supra*, 2 Cal.5th at pp. 856–857.)

According to Richard, then, *Carmack* stands for the proposition that his judgment creditors may only file a petition to enforce a judgment against his annual principal distributions, and the court may only make an order on those petitions, on or after January 13 of each year—the date the trustee is required to make those distributions. And here, the four judgment creditors filed their petitions in the fall of 2017, well before the

14

January 13, 2018 distribution date. Richard therefore asserts the court erred by considering the petitions in the first instance.

But even assuming the quoted portion of *Carmack* supports Richard's timing argument—a point we do not resolve—Richard ignores a critical point and one which the Supreme Court emphasized at the outset of its decision in *Carmack*: the case arose in the context of a Chapter 7 bankruptcy. Specifically, the court noted that two significant factual circumstances informed its decision. First, the trust at issue, like the trust in the present case, "is distinctive in directing all disbursements to be made from principal." (*Carmack, supra*, 2 Cal.5th at p. 850.) Second, and importantly for our purposes, the court explained:

"We are also mindful that this case arises out of a bankruptcy proceeding. Ordinarily, a judgment creditor who is unable to satisfy all of the judgment out of the beneficiary's trust interest may continue to attempt to collect on the balance of the judgment from whatever other assets the beneficiary may have. Here, however, the amount Reynolds's creditors will receive depends on the reach of the bankruptcy trustee. Any remaining debts after the bankruptcy process will be extinguished, and any further distributions will be unencumbered. (11 U.S.C. § 541(c)(2).) That spendthrift provisions can work to beneficiaries' advantage in bankruptcy in this way has long been recognized as a characteristic of such provisions. (See Rest.3d Trusts, § 58, com. a, p. 367 ['An important byproduct of the limited spendthrift protection, however, is the again limited but nevertheless important insulation that may result from a discharge in bankruptcy.'].)" (*Carmack, supra*, 2 Cal.5th at p. 850.)

This point is critical for our analysis. After a Chapter 7 bankruptcy case is initiated, the debtor relinquishes all rights

and interest in property that is properly included in the bankruptcy estate and the bankruptcy court has exclusive jurisdiction over that property. (See 11 U.S.C. § 541(a); *Tennessee Student A. C. v. Hood* (2004) 541 U.S. 440, 447 ["Bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate"]; and see Fitzgerald et al., Rutter Group Prac. Guide Bankruptcy (Nat. Ed.) (The Rutter Group 2018) ¶ 6:17 ["[D]ebtors relinquish their rights and interests in estate property upon commencement of a Chapter 7 case, including title and the right to sell or transfer the property"].) And the automatic stay triggered upon commencement of a bankruptcy case generally prohibits creditors from taking any action against estate property (e.g., to enforce a judgment, obtain possession of estate property, or perfect a lien). (11 U.S.C. § 362(a); Fitzgerald et al., Rutter Group Prac. Guide Bankruptcy (Nat. Ed.), *supra*, ¶ 6:20.) In other words, after a Chapter 7 bankruptcy case is initiated, a creditor need not worry that a trustee would make any disbursement directly to the beneficiary/debtor. The precise timing of the creditor's enforcement efforts would then be governed not only by section 15301(b) but also—and more importantly—by the rules and procedures applicable in bankruptcy court.

In short, the court in *Carmack* was not asked to address the specific question presented by Richard here: when a judgment creditor may file a petition to enforce a judgment under section 15301(b) in a non-bankruptcy setting. And, of course, " '[i]t is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 566.) We therefore conclude that even if *Carmack* suggests that a creditor must wait until after a trust disbursement is due and

16

payable before filing a request to enforce a money judgment against the disbursement, that procedure is applicable in a Chapter 7 bankruptcy proceeding. But we presume the court did not intend to address facts not before it—and which are before us—where creditors are attempting to reach a trust disbursement while it is in the hands of the trust's trustee, rather than as part of a bankruptcy estate.

For the reasons we have already discussed, we conclude a creditor may file a petition under section 15301(b) to enforce a money judgment against a nondiscretionary principal distribution before the distribution is due and payable.

2. **The court did not abuse its discretion by ordering the trustee to delay the payment of Richard's 2018 principal disbursement until after it issued its final ruling on the creditors' petitions.**

Richard also contends the court erred when it refused to rule on the judgment creditors' petitions from the bench on January 10, 2018, and instead directed the trustee to withhold Richard's principal distribution until the court issued its final order on the petitions. We disagree.

Richard first argues that the court committed "reversible error when it deliberately failed to rule on the petitions/motions when heard on January 10, 2018 before Richard's distribution became 'due and payable.' Instead, the probate court ordered Comerica not to make a distribution to Richard until it issued its final ruling, which was conveniently after Richard's distribution became 'due and payable' days later on January 13, 2018." And throughout that portion of the brief, Richard casts aspersions on the court, suggesting it purposefully delayed its ruling, failed to provide good cause for its decision not to rule from the bench, and

17

sought to "achieve some sort of desired result." As an initial matter, we see no evidence of favoritism on the part of the court in the record before us.

More to the point, Richard provides no citations to any legal authority supporting his contention that the court was required to rule from the bench at the hearing, simply because he asked that the court do so. We could, therefore, consider this argument forfeited. (See, e.g., *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655 ["[T]he trial court's judgment is presumed to be correct, and the appellant has the burden to prove otherwise by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited"].) In any event, " 'California courts have inherent power to "... control [their] proceedings." ' [Citation.] 'From their creation by article VI, section 1 of the California Constitution, California courts received broad inherent power "not confined by or dependent on statute." [Citations.] This inherent power includes "fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation." [Citation.]' [Citation.] … This inherent power of a trial court is to be exercised to ' "achieve justice and prevent misuse of [its] proces[s] ... ." [Citation.]' [Citation.]" (*Huang v. Hanks* (2018) 23 Cal.App.5th 179, 181–182.) The court's decision to issue a written ruling a few days after the January 10, 2018 hearing— rather than issuing a ruling from the bench—plainly falls within the court's discretion.

As for the court's instruction that the trustee withhold Richard's annual principal distribution pending the issuance of its order, that too falls within the bounds of the court's discretion.

18

It is well settled that a court sitting in probate "has the '*inherent power* to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust.' [Citation.] This inherent equitable power of the probate court has long been recognized to encompass the authority to take remedial action." (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427.) Such remedial action may include removing a trustee or suspending a portion of the trustee's power based on a trustee's misconduct. (*Id.* at pp. 427–428.) Here, that inherent power included directing the trustee to delay payment to Richard in order to preserve its jurisdiction to make an appropriate order on the creditors' petitions to enforce their money judgments.

## 3. Richard's other arguments are unavailing.

### 3.1. The trust is not a support trust.

Richard contends the trust at issue is a support trust and that, as a result, the court erred by not conducting a further hearing to determine what portion of his annual principal distribution should not be reached by the creditors because it was necessary for his support and the support of his dependents. Richard relies on section 15302, which states: "Except as provided in Sections 15304 to 15307, inclusive, if the trust instrument provides that the trustee shall pay income or principal or both for the education or support of a beneficiary, the beneficiary's interest in income or principal or both under the trust, to the extent the income or principal or both is necessary for the education or support of the beneficiary, may not be transferred and is not subject to the enforcement of a money judgment until paid to the beneficiary."

19

Section 15302 relates to what is generally known as a support trust, i.e., a trust "under which the trustee is to pay or apply no more than is necessary to educate or support the beneficiary." (13 Witkin, Summary of Cal. Law (11th ed. 2017) Trusts, § 172, pp. 761–762.) We reject Richard's argument because the trust at issue here is not a support trust. Instead, the distributions of income and principal are mandatory and based on factors other than Richard's education and support.

As noted *ante*, under paragraph 5.7, the trustee is required to make annual distributions of principal according to a formula set forth therein. The principal disbursements are mandatory and not related in any way to Richard's needs. Paragraph 5.6 also provides that income from trust assets must be distributed on a quarterly basis and according to a formula set forth in the trust documents. Again, these disbursements are mandatory and not calculated with reference to Richard's education or support needs.

Richard cites paragraph 10.1, the spendthrift provision, which is set forth in full *ante*. That paragraph generally restricts each beneficiary's ability to transfer his or her interest in the trust and instructs the trustee to make payments to the beneficiaries, or banks specified by them, when due. And as Richard notes, the final sentence in paragraph 10.1 states: "This Article shall not restrict any authority of the Trustee to use and disburse funds for the support, maintenance, health and education of a Beneficiary, or to disburse funds to a guardian or conservator as herein provided."

This sentence, which is found at the end of the spendthrift trust provision, cannot reasonably be construed to convert the entire trust into a support trust, as Richard asserts. Rather, the most reasonable construction is that notwithstanding the trust's

spendthrift provision, the trustee may in his or her discretion make disbursements to persons or entities other than the trust beneficiary, if and to the extent those disbursements are for the support, maintenance, health, or education of the beneficiary. But the fact remains that the primary purpose of the trust is the nondiscretionary disbursement of income and principal according to the formulas and schedules set forth in the trust documents in paragraphs 5.6 and 5.7.

This is not to say that Richard's financial needs were irrelevant under section 15301(b). As noted, the final sentence in that subdivision provides, "The court in its discretion may issue an order directing the trustee to satisfy all or part of the judgment out of that principal amount." The court could properly have considered whether Richard had sufficient funds at his disposal—beyond the annual principal distribution—to provide for his basic needs and the needs of his dependents. And if he did not, the court could have exercised its discretion to direct some portion of the principal distribution to Richard. But as Richard submitted no evidence to the court concerning his financial circumstances, the court had no basis upon which to exercise its discretion in that regard.

### 3.2. The personal receipt clause does not shield Richard from creditor claims.

Finally, Richard apparently contends the trustee is prohibited from disbursing funds to his creditors because the trust contains a personal receipt clause. Again, in paragraph 10.1, the trust provides: "The personal receipt of the Beneficiary may be made a condition precedent to the payment or delivery by the Trustee to that Beneficiary. The Trustee may, however,

21

deposit in any bank designated in writing by a Beneficiary, to his or her credit, income or principal payment to that Beneficiary."

Richard's precise argument is that the court erred because it did not address the personal receipt provision, despite the fact that his counsel raised the issue at the January 10, 2018 hearing. We conclude any error in this regard is not prejudicial because the personal receipt provision is plainly discretionary and would not, in any event, allow Richard to avoid his creditors to the extent they have rights provided under the statutes we have discussed. Richard cites no legal authority to the contrary.

## DISPOSITION

The order granting the petitions to enforce money judgments under section 15301(b) is affirmed. Respondents shall recover their costs on appeal.

## CERTIFIED FOR PUBLICATION

LAVIN, J.

WE CONCUR:


EDMON, P. J.


DHANIDINA, J.

22