Filed 11/14/23  Maroudas v. Carrillo CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PETER JOHN MAROUDAS, | H050224 |
| Petitioner, | (Santa Clara County Super. Ct. No. 21EA000057) |
| v. | |
| REINA DOLORES CARRILLO, | |
| Respondent. | |

Petitioner Peter John Maroudas, by and through his guardian ad litem Tasia Simmons, sought an elder abuse restraining order against respondent Reina Dolores Carrillo, pursuant to Welfare and Institutions Code section 15657.03.[1]  Maroudas died prior to the hearing on his request.  Carrillo thereafter asked the trial court to dismiss the protective order application, contending that Maroudas's death rendered the application moot, and claiming that the application sought remedies not authorized by the Welfare and Institutions Code.  Over Simmons's objection, the trial court granted the motion to dismiss because Maroudas was deceased.  At a separate hearing, the court awarded Carrillo prevailing party attorney fees and costs.

On appeal, Simmons argues that the trial court erred in dismissing the restraining order application based solely on the death of the party for whom protection was sought,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated.

as she contends the statutory scheme allows for financial restitution after the protected party's death. Simmons further alleges the trial court erred in awarding prevailing party attorney fees to Carrillo. Finding no error, we will affirm the orders.

## I. THE ELDER ABUSE RESTRAINING ORDER

### A. Factual and Procedural Background

Simmons filed the subject request for elder abuse restraining order in May 2021 (the EARO request), on behalf of her father, Maroudas, who was 90 years old at the time of the application. Simmons alleged that Maroudas and Carrillo met when Carrillo started working at Maroudas's restaurant approximately 20 years before the underlying matter commenced. Simmons claimed Maroudas and Carrillo participated in a confidential wedding ceremony in May 2020, while Carrillo was still married to someone else; Carrillo alleged the ceremony took place in August 2020, shortly after the dissolution of her previous marriage was final.[2]

In support of the EARO request, Simmons alleged that Carrillo took advantage of Maroudas's diminished mental capacity in the previous years. Specifically, Simmons claimed Carrillo admitted in a letter she signed in 2016 that she had $85,000 of her own car payments paid from Maroudas's accounts. In that letter, Carrillo agreed to pay $40,000 in restitution to Maroudas within three months, and to pay the trust that would be the inheritor of Maroudas's estate if he died before she made the payment. Simmons alleged that Carrillo took significant amounts of cash from Maroudas and from his home without permission over the years. While there were times where Maroudas "willingly" gave Carrillo money, Simmons contended that he "[did] not realize what he [was] doing or how much money he [had] given [Carrillo]." Simmons asked the trial court to grant a

---

[2] Simmons filed a petition for nullity of the marriage on behalf of Maroudas on the grounds of bigamy. Carrillo sought dissolution of the marriage in her response. That petition is pending separately in Santa Clara County Superior Court, case No. 20FL003715.

restraining order preventing Carrillo from presenting herself as Maroudas's business representative and also from contacting him. She further asked the court to order Carrillo to reimburse the $40,000 in restitution that she agreed to pay in 2016, and to pay attorney fees for preparation of the EARO request, as well as costs incurred for an evaluation of Maroudas's mental capacity. The trial court granted temporary restraining orders based on Simmons's request, including personal conduct orders and stay-away orders.

Carrillo opposed the requested restraining orders. She argued that Simmons failed to demonstrate evidence of past financial abuse. In addition, Carrillo argued that Simmons's request for repayment of the $40,000 was not authorized by the language of section 15657.03, subdivision (h), which she contended allowed the court to issue only those orders specified in the statute.

Carrillo later filed a supplemental response to the EARO request, alleging that Maroudas had died in August 2021. She then filed a motion to dismiss the EARO application on the grounds that Maroudas's death rendered the application moot. She argued that there was no real party in interest after Maroudas's death, as the guardianship ad litem terminated by operation of law on his death. Although section 15657.3, subdivision (c) would have permitted a civil action for damages to proceed despite Maroudas's death ["death of the elder . . . does not cause the court to lose jurisdiction of a claim for relief for abuse of that elder. . . ."], Carrillo contended that this statute was inapplicable to an EARO request. Carrillo argued that the additional relief requested by Simmons, such as damages based on the alleged breach of the 2016 reimbursement agreement and expert expenses, were "beyond the list of authorized remedies contained in the Welfare and Institutions Code."

In opposition to the motion to dismiss, Simmons relied on section 15657.3, subdivision (c) to claim that the court did not lose jurisdiction as a result of Maroudas's death, and argued that she could maintain the action as his personal representative, pursuant to section 15657.3, subdivision (d). She contended that the elder abuse action

3

she filed in May 2021 encompassed more than the protective orders, as she also sought reimbursement for the funds taken by Carrillo. She alleged she could seek these remedies under the authority of section 15657.5, subdivision (a) ["Where . . . defendant is liable for financial abuse," elder may seek "compensatory damages and all other remedies otherwise provided by law. . . ."]. Carrillo, in reply, did not dispute that the Welfare and Institutions Code authorized additional remedies beyond the protective orders set forth in section 15657.03, but argued that Simmons was required to file a separate civil lawsuit to obtain them, rather than requesting them in her application for protective orders.

At a hearing in January 2022, the trial court granted Carrillo's motion to dismiss. It concluded that "there could not be a hearing for the elder abuse restraining order because the victim had deceased," and that there could not be a hearing for the financial abuse or damages without first holding a hearing for the restraining order. While section 15657.5 provided for financial remedies to an elder victim of financial abuse, the court indicated Simmons should have filed a civil action to pursue such relief, separate from the request for a restraining order. The court found sections 15657.3, subdivision (c) and 15657.5 inapplicable in the restraining order proceeding because the victim was deceased. The court did not hear any evidence or arguments regarding the need for a restraining order or related financial relief because it granted Carrillo's motion to dismiss. In its written order, the court indicated that Maroudas's death during the pendency of the action rendered the request for injunctive relief moot.

Simmons timely appealed from the order granting the motion to dismiss, which in effect denied her request for injunctive relief, and is appealable under Code of Civil Procedure section 904.1, subdivision (a)(6).

4

## B. *Discussion*

### 1. *The Elder Abuse Act*

Section 15657.03 is one of many statutes in the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act, § 15600 et seq.). Article 8.5 of the Elder Abuse Act, commencing with section 15657, entitled "Civil Actions for Abuse of Elderly or Dependent Adults," was enacted by the Legislature "to enable persons to engage attorneys to take up the cause of abused elderly persons and dependent adults," finding that "few civil cases are brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits." (§ 15600, subds. (h), (j).) Under the Elder Abuse Act, "[w]here it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs." (§ 15657.5, subd. (a).) Section 15657.3, subdivision (c) provides, "The death of the elder . . . does not cause the court to lose jurisdiction of a claim for relief for abuse of that elder . . . ." After the death of the elder, the right to commence or maintain an action passes to the personal representative of the decedent, if any, or to other persons as set forth in the statute. (§ 15657.3, subd. (d).)

Within the Elder Abuse Act, section 15657.03 authorizes an elder who has suffered abuse, or a person appointed as the guardian ad litem for the elder, to seek protective orders.[3] (§ 15657.03, subd. (a)(1), (2)(A).) Financial abuse is a type of abuse that can support a request for protective orders. (§§ 15657.03, subds. (a)(1), (b)(1),

---

[3] The Legislature amended section 15657.03 effective January 1, 2023, to add additional provisions that are not at issue in this appeal. (Stats. 2021, ch. 273, § 3.) Except as otherwise indicated, references to section 15657.03 in this opinion are to the version that was in effect in 2021 and 2022, when the relevant proceedings took place. (Stats. 2021, ch. 273, § 2, eff. Jan. 1, 2022 [made nonsubstantive changes to the statute]; Stats. 2019, ch. 628, § 1, eff. Jan. 1, 2020.)

15610.07, subd. (a)(3).) Such financial abuse occurs when someone "(1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both. [¶] . . . [¶] (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70." (§ 15610.30, subd. (a).) " 'Undue influence' means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." (§ 15610.70, subd. (a).)

"[A]n order may be issued under [section 15657.03], with or without notice, to restrain any person for the purpose of preventing a recurrence of abuse, if a declaration shows . . . reasonable proof of a past act or acts of abuse of the petitioning elder . . . ." (§ 15657.03, subd. (c).) On a proper showing, the court may issue a temporary ex parte order "excluding a party from the petitioner's residence . . . ." (§ 15657.03, subd. (d).) After notice and hearing, in a proceeding under section 15657.03 the court "may issue . . . any of the orders set forth" in section 15657.03, subdivision (b)(4). (§ 15657.03, subd. (h).) Relevant to this appeal, the court can issue an order "enjoining a party from abusing, intimidating, molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning . . ., destroying personal property, contacting, either directly or indirectly, by mail or otherwise, or coming within a specified distance of, or disturbing the peace of, the petitioner . . . ." (§ 15657.03, subd. (b)(4)(A).) The court can exclude a party from the petitioner's residence or dwelling (§ 15657.03, subd. (b)(4)(B)), and make orders enjoining any party from certain behaviors necessary to effectuate the orders set forth in subparagraphs (A) and (B) (§ 15657.03, subd. (b)(4)(C)).

Section 15657.03 does not expressly authorize financial restitution in an EARO proceeding.[4] The statute provides that it "does not preclude a petitioner's right to use other existing civil remedies." (§ 15657.03, subd. (x).)

*2. Standard of Review*

Generally, we review a restraining order issued pursuant to section 15657.03 for abuse of discretion. (*White v. Wear* (2022) 76 Cal.App.5th 24, 35.) However, the issue on appeal here requires us to interpret section 15657.03 within the broader context of Article 8.5 of the Elder Abuse Act. The interpretation of a statute presents a question of law, which we review de novo. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 (*Goodman*).) In doing so, we apply the law here to undisputed facts.[5] (See *Gordon B. v. Gomez* (2018) 22 Cal.App.5th 92, 98; *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.)

In interpreting the statute, "[w]e seek to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] '[W]e begin by looking to the statutory language. [Citation.] We must give "the language its usual, ordinary import and accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." [Citation.]' [Citation.]" (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849-850 (*Carmack*).) Where the language is clear and there is no uncertainty as to the intent of

---

[4] Effective January 1, 2023, in a proceeding under section 15657.03, the trial court can make a "finding that specific debts were incurred as the result of financial abuse of the elder or dependent adult by the respondent." (Current § 15657.03, subd. (b)(5)(D)(i).) However, that finding "shall not entitle the petitioner to any remedies other than those actually set forth in" section 15657.03. (Current § 15657.03, subd. (b)(5)(D)(ii).)

[5] While the parties disputed whether Carrillo engaged in elder abuse, they did not dispute the facts underlying the trial court's determination as to whether the matter could proceed to an evidentiary hearing, i.e., that the elder for whom the guardian ad litem sought protection died while the request for the restraining order was pending.

7

the legislature, we simply enforce the statute on its terms. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 (*DuBois*).)

Additionally, we must consider the meaning of the statutory section in the context of the entire statute and the statutory scheme of which it is a part. (*DuBois*, *supra*, 5 Cal.4th at p. 388.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med*, *Inc*. *v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 (*Dyna-Med*).) To ascertain the most reasonable interpretation of a statute, we also may consult its legislative history and background. (*Goodman, supra,* 47 Cal.4th at p. 1332.)

### 3. The EARO request did not properly raise claims that would survive Maroudas's death under section 15657.3.

Simmons argues that the trial court erred in dismissing the restraining order request. She first contends that section 15657.3 extended the court's jurisdiction to hear the request after Maroudas's death. In doing so, Simmons first assumes that her request for restitution based on Carrillo's purported agreement to repay $40,000 to Maroudas was properly raised in the EARO request, alleging that "there is nothing in [the] Elder Abuse Act that requires [Simmons] to have filed a companion civil suit to be held in abeyance just in case [Maroudas] died." We conclude that it is not within the trial court's authority to issue a restitution order when issuing an elder abuse restraining order under section 15657.03. Rather, a separate civil action must be filed on behalf of the elder which, under section 15657.3, subdivision (c), can survive the death of the elder.

Section 15657.03, subdivision (a)(1) provides, "An elder . . . who has suffered abuse, as defined in Section 15610.07, may seek protective orders *as provided in this section*." (Italics added.) The plain language of the statute thus limits the orders that a petitioner may seek to those provided in section 15657.03. These orders are defined in subdivision (b)(4). The trial court can issue orders enjoining a party from physically or

8

emotionally abusing or harassing the elder or their named family or household members on a showing of good cause. (§ 15657.03, subd. (b)(4)(A).) It can exclude a party from the elder's residence or dwelling. (§ 15657.03, subd. (b)(4)(B).) The trial court can enjoin other "specified behavior" as needed to effectuate these orders. (§ 15657.03, subd. (b)(4)(C).) The language defining orders in section 15657.03, subdivision (b)(4) does not include orders for restitution or damages, or language authorizing a petitioning party to seek other orders available under the broader Elder Abuse Act in an EARO application. Based on the language of the statute, we construe section 15657.03, subdivisions (a)(1) and (b) to preclude the trial court from issuing such orders in an EARO.

Simmons argues that we should read section 15657.03 to allow the trial court more expansive powers to issue orders beyond those included in the definition of "protective order" set forth in section 15657.03, subdivision (b)(4). But well-established principles of statutory construction compel us to conclude that by specifying the orders that can be issued to a petitioning elder under section 15657.03, the Legislature intended to exclude other orders.[6] Further, allowing the trial court to issue orders providing other remedies would render the definition of "protective order" as set forth in section 15657.03, subdivision (b)(4) surplusage, which is to be avoided. (*Carmack*, *supra*, 2 Cal.5th at p. 850.)

Simmons notes that in the context of other protective order statutes, such as the Domestic Violence Protection Act (DVPA) under Family Code section 6200, the Legislature has expanded the orders that may issue from the trial court to include child custody, visitation, and spousal and child support. But the language of the Family Code expressly allows such orders, thus indicating that the Legislature intended that remedies available under the DVPA be expanded beyond protection of the domestic violence

---

[6] *Expressio unius est exclusio alterius* is a principle of statutory construction wherein "the expression of one thing in a statute ordinarily implies the exclusion of other things. [Citation.]" (*In re J.W.* (2002) 29 Cal.4th 200, 209.)

victim. (Fam. Code, §§ 6323, 6340, subd. (a)(1), 6341.) The Legislature did not elect to include similar expansive language when crafting the remedies available in section 15657.03.

We discern no clear legislative intent to the contrary. (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230.) Indeed, the Legislature declared that the issuance of an EARO is "for the purpose of preventing a recurrence of abuse. . . ." (§ 15657.03, subd. (c).) Restitution and damages are methods of providing remediation of past abuse, not tools to prevent the recurrence of abuse, and are inconsistent with the stated purpose of the Legislature in creating the EARO injunctive remedy. We thus discern that the Legislature did not intend to include such orders in the relief that can be obtained through a petition for an EARO.

Even if section 15657.03 did authorize orders granting restitution or damages, Simmons's argument fails because a request for injunctive relief sought in an EARO does not survive the death of the protected elder under section 15657.3, subdivision (c). While section 15657.3, subdivision (c) does not specify the types of proceedings which the Legislature intended could be maintained after the death of an elder, both the language of the statute and its legislative history indicate that the statute is designed to allow the court to retain jurisdiction over civil actions, not requests for injunctive relief. The legislative history of section 15657.3 makes clear the Legislature enacted subdivision (c) to allow the continuation of a civil action involving causes of action that survive the decedent. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 183 (2007-2008 Reg. Sess.) Mar. 13, 2007 ["Existing law . . . establishes who may commence a civil action when a cause of action survives the person entitled to commence the action. [¶] . . . [¶] This bill would" specify who may maintain an action after the decedent elder has died.]; Sen Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 183 (2007-2008 Reg. Sess.) as amended Mar. 20, 2007; Assem. Com. on Judiciary, Analysis of Sen. Bill 183 (2007-2008) June 19, 2007.) A restraining order request under section 15657.03 is

10

not a civil action in which the petitioner alleges causes of action. The remedy afforded through an EARO is an injunction providing physical, emotional, and financial protection personal to the proposed protected elder, such that the elder person's death renders the request moot.[7]

Simmons contends that the trial court's order granting Carrillo's motion to dismiss the EARO request effectively renders the trial court "powerless to order the return of the stolen property that formed the basis of the financial abuse" at issue in the restraining order request. But under the Welfare and Institutions Code, the trial court can order return of funds based on a claim of elder financial abuse. (See §§ 15657.5, subd. (a) [authorizes compensatory damages and attorney fees and costs in addition to "all other remedies otherwise provided by law"], 15657.6 [authorizes return of property and related remedies when elder lacks capacity].) As section 15657.03 does not authorize the trial court to include restitution or damages in a restraining order issued under that statute, a party seeking such remedies must file a civil action. Indeed, petitioning for an EARO or its issuance does not prevent an elder or their representative from using other civil remedies. (§ 15657.03, subd. (x).)

Pursuant to section 15657.3, subdivisions (c) and (d), a civil action may be commenced by a designated representative after the death of the elder adult, or maintained if it was commenced before the elder's death. Here, Simmons did not commence a restitution action prior to Maroudas's death. Subject to the applicable statutes of limitations, she is not precluded from doing so now, nor was she precluded from doing so before the trial court dismissed the EARO request. (See § 15657.3, subd. (f).)

---

[7] The trial court may issue the restraining orders set forth in section 15657.03 in favor of members of the elder or dependent adult's family or household. (§ 15657.03, subd. (b)(5)(A).) Simmons did not request such orders. Thus, we provide no opinion whether such a request would survive the elder or dependent adult's death under section 15657.3.

11

If the applicable statute of limitations bars any such civil action in this case, we understand Simmons to argue that principles of equity should justify satisfaction of petitioner's financial losses through the EARO process. But we cannot substitute our sense of equity for the stated intent of the Legislature when it determined what relief can be sought and ordered under section 15657.03. Section 15657.03 did not afford any relief that would have survived Maroudas's death. The trial court correctly granted Carrillo's motion to dismiss the EARO petition.

### 4. *Transfer to the general civil calendar was not required.*

Citing section 15657.3, subdivision (b), Simmons argues that the probate department, which issued the order dismissing the EARO request, should have transferred the matter to the general civil calendar. That statute provides, "The department of the superior court having jurisdiction over probate conservatorships shall not grant relief under [Article 8.5] if the court determines that the matter should be determined in a civil action, but shall instead transfer the matter to the general civil calendar of the superior court. The court need not abate a proceeding for relief pursuant to this article if the court determines that the civil action was filed for the purpose of delay." (§ 15657.3, subd. (b).) Because damages and restitution are not authorized in an EARO request, there was nothing for the probate department to transfer to the general civil calendar after Maroudas's death. All appropriate claims for relief under section 15657.03 abated when he died. The trial court did not err in failing to transfer the case to the general civil calendar.

## II. ATTORNEY FEES AND COSTS

### A. *Factual and Procedural Background*

After the court dismissed the EARO request, Carrillo filed a motion for prevailing party attorney fees and costs pursuant to section 15657.03, subdivision (t). She argued that the court should apply the definition of "prevailing party" set forth in Code of Civil Procedure section 1032, subdivision (a)(4), which defines that term to include "a

12

defendant in whose favor a dismissal is entered." Simmons opposed the motion. She argued that such an award was discretionary, and suggested that granting it would reward Carrillo for her financial abuse of Maroudas. Simmons underscored that the court did not dismiss the restraining order request on the merits. Rather, it found that it could not hear the evidence purportedly supporting the allegation of financial abuse because of Maroudas's death. Had the court heard the evidence, Simmons contended that the court likely would have found that Carrillo did commit financial abuse of an elder.

Following a hearing, the trial court granted Carrillo's motion in part. The court determined Carrillo was a prevailing party under section 15657.03, subdivision (t) because the court granted a motion to dismiss in her favor. It then turned to the reasonableness of Carrillo's request based on the lodestar method. Because the court dismissed the matter solely because of Maroudas's death without considering the merits of the case, it determined that only those hours related to the motion to dismiss should be awarded to Carrillo. The court found a reasonable amount of attorney time to prosecute the motion to dismiss was 10 hours at $350 per hour, plus court appearances billed at $550 per hour. It awarded Carrillo $5,150 in prevailing party fees under section 15657.03, subdivision (t), as well as $158.52 in costs.

### B. Discussion

"The prevailing party in an action brought under [section 15657.03] may be awarded court costs and attorney's fees, if any." (§ 15657.03, subd. (t).) We review an award of prevailing party attorney fees for abuse of discretion. (See *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1509 [applying abuse of discretion standard to award of prevailing party fees in a request for protective orders under the DVPA]; *Elster v. Friedman* (1989) 211 Cal.App.3d 1439, 1443 (*Elster*) [applying abuse of discretion standard to order denying prevailing party fees in a request for a civil harassment restraining order (Code Civ. Proc., § 527.6)].) It is an abuse of discretion if the trial court

13

bases its decision on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156; *Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 709.)

Simmons argues that the trial court abused its discretion by awarding prevailing party attorney fees to Carrillo. First, she argues that the award requires her to "enrich" an "unqualified wrongdoer," as it is "uncontested" that Carrillo stole money from Maroudas. Second, she contends that public policy does not support treating Carrillo as a prevailing party, as the trial court did not dismiss the action on its merits. Finally, Simmons alleges that allowing Carrillo to recover prevailing party fees based solely on the fact that Maroudas died before the trial court could hear the merits of the application for protective orders would have a chilling effect on people who would otherwise seek protection for elderly or dependent adults under the Elder Abuse act.

We are required to presume that the trial court's order is correct. The appellant bears the burden of affirmatively showing an error based on the record presented to the trial court. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) We determine that the trial court did not abuse its discretion when it granted the attorney fees request.

The Legislature did not define "prevailing party" in section 15657.03, subdivision (t), and there is no case authority interpreting the term as used in the statute. Appellate courts disagree on how to define the "prevailing party" when a statute is silent on the issue. Some courts look to a more general statute, Code of Civil Procedure section 1032, which entitles a prevailing party to recover costs in any action or proceeding, for guidance. (Code Civ. Proc., § 1032, subd. (b); *Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1776 [applying the statute's definition of "prevailing party" to affirm an award of attorney fees to a defendant after the plaintiff voluntarily dismissed her petition for a civil harassment restraining order under Code Civ. Proc., § 527.6]; *Elster*, *supra*, 211 Cal.App.3d at p. 1443.)

It appears that the trial court applied Code of Civil Procedure section 1032 here, stating, "The court granted a motion to dismiss ending the matter in Respondent's favor.

Accordingly, the court finds that Respondent is the prevailing party." " 'Prevailing party' includes the party with a net monetary recovery, *a defendant in whose favor a dismissal is entered*, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief *and in situations other than as specified*, the 'prevailing party' shall be as determined by the court . . . ." (Code Civ. Proc., § 1032, subd. (a)(4), italics added.) The plain language of Code of Civil Procedure section 1032, subdivision (a)(4) includes a defendant in whose favor a dismissal was entered, like Carrillo, as a prevailing party.

While there are circumstances in which a party cannot recover prevailing party costs under Code of Civil Procedure section 1032 when an action abates by the death of the other party (see *Begbie v. Begbie* (1900) 128 Cal. 154, 155-156), where a lack of subject matter jurisdiction is raised by the pleadings, the trial court retains the authority to award costs following the entry of a resulting judgment of dismissal. "That judgment of dismissal and the proceedings on which it depended were based on the trial court's jurisdiction to determine its own jurisdiction. Moreover, the trial court did not merely declare that it lacked jurisdiction or abate the action or refuse to act, it determined by resolution of disputed facts that the defendant prevailed on its jurisdictional defense." (*Brown v. Desert Christian Center* (2011) 193 Cal.App.4th 733, 744 (*Brown*).)

Carrillo moved the court to dismiss the action over Simmons's objection, thus placing at issue the trial court's jurisdiction to hear the case. The trial court held proceedings on her motion, rather than declaring sua sponte that it lacked jurisdiction or abating the action upon notice of Maroudas's death. Applying the ruling in *Brown* here, we cannot say that the trial court applied an incorrect legal standard, or that it abused its discretion in determining that Carrillo was the prevailing party under Code of Civil Procedure section 1032 as the "defendant in whose favor a dismissal was entered." (Code Civ. Proc., § 1032, subd. (a)(4).)

15

Other courts have rejected the application of Code of Civil Procedure section 1032 when a statute fails to define "prevailing party" for purposes of awarding attorney fees, instead holding that the determination of the prevailing party in such an instance is left to the discretion of the trial court. (*Galan v. Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1128 (*Galan*).) In *Galan*, the appellate court determined that where the plaintiffs voluntarily dismissed without prejudice a "slum housing case" under Civil Code section 1942.4, the trial court "had discretion to determine whether [the dismissed defendant] was the prevailing party 'on a practical level.' [Citation.]" (*Id.* at p. 1129.) Based on the record, the appellate court affirmed the trial court's determination that there was no prevailing party in the matter. The plaintiffs settled with other defendants and " 'made a practical determination that it was not worth pursuing [the appellant] through what would have been a costly trial. . . . The merits of the dispute against [appellant] were never resolved. Instead, it appears that [appellant] "waited the plaintiffs out," betting that the plaintiffs, having settled with the other defendants, would let [the appellant] go.' " (*Id.* at pp. 1129-1130.) Thus, while the voluntary dismissal entitled the appellant to recover costs under Code of Civil Procedure section 1032, the trial court correctly found that the appellant was not a prevailing party for purposes of an attorney fees award under Civil Code section 1942.4. (*Id.* at p. 1130.)

Here Simmons did not voluntarily dismiss the EARO request after Maroudas's death, and Carrillo moved to dismiss the case. Simmons opposed the motion. Carrillo had to incur attorney fees in order to raise the jurisdictional issue to the trial court. She prevailed on the contested motion, and the trial court exercised its discretion to find that she was a prevailing party under section 15657.03, subdivision (t), carefully limiting its order to include only those fees Carrillo incurred to prosecute the motion to dismiss. We conclude that the trial court did not abuse its discretion in doing so, as it awarded the fees solely on the contested jurisdictional issue.

16

Simmons argues that allowing a responding party to recover prevailing party fees based only on the death of the proposed protected party could have a chilling effect on persons who might seek protection under the Elder Abuse Act. But our conclusion here does not allow recovery of prevailing party attorney fees to the respondent any time an EARO proceeding abates because of the petitioner's death. We limit our holding to the facts of this case, where we affirm the trial court's authority to exercise its discretion under section 15657.03, subdivision (t) to award attorney fees on the death of the proposed protected elder if it must resolve, on the motion of the parties, its jurisdiction over the subject matter of the relief requested in the petition for an elder abuse restraining order. We leave to the Legislature's sound discretion the decision to prohibit such an award as a matter of public policy.

### III.   DISPOSITION

The May 20, 2022 order granting in part respondent's motion for attorney fees, and the May 27, 2022 order granting Carrillo's motion to dismiss the application for a protective order are each affirmed. The parties shall bear their own costs on appeal.

17

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.


_____
Lie, J.


H050224
Maroudas v. Carrillo