Filed 3/15/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050653 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 21CV391905) |
| v. | |
| LAURIE SMITH, | |
| Defendant and Appellant. | |

For nearly 25 years, appellant Laurie Smith was the Santa Clara County Sheriff. Towards the end of this period, prosecutors began investigating whether members of her office had committed bribery and other crimes in processing applications for licenses to carry concealed firearms. Multiple senior Sheriff's Office officials as well as private individuals have been prosecuted for these crimes, resulting in several appeals in this court. (See *People v. Moyer* (2023) 94 Cal.App.5th 999; *Jensen v. Superior Court* (2021) 64 Cal.App.5th 1003; *Schumb v. Superior Court* (2021) 64 Cal.App.5th 973. )

Although Smith has not been criminally charged, in 2021 a civil grand jury presented an accusation charging her with misconduct in office, and the People sought her removal under statutory provisions authorizing removal of local officers for willful or corrupt misconduct in office. (Gov. Code, §§ 3060-3075.) A trial began in September 2022 and continued for a month. After the jury began deliberating, Smith abruptly retired and moved to dismiss the removal proceedings on the ground that her retirement rendered them moot. The trial court denied the motion, the jury found Smith guilty on six counts, and the court entered a judgment of removal.

Smith now appeals, arguing that this case is moot because removal proceedings seek a remedy—removal from office—which can no longer be granted because of her retirement. We disagree. Despite Smith's retirement, the judgment of removal against her has at least one collateral consequence: It bars Smith from jury service under section 203, subdivision (a)(5) of the Code of Civil Procedure (Section 203(a)(5)), which excludes persons "convicted of malfeasance in office." In Smith's removal trial, the jury found her guilty of perjury, which is a form of malfeasance in office, and the statutes governing removal procedures term such verdicts a "conviction." (Gov. Code, § 3072.) Consequently, under the literal language of the removal and jury eligibility statutes, Smith was convicted of malfeasance in office and thus is barred from serving as a juror.

Smith argues that the literal language of these statutes should be disregarded because removal proceedings are not criminal cases and, in her view, a person can be "convicted" only in a criminal case. In fact, removal proceedings employ many criminal procedures, and when the key language in Section 203(a)(5) was first enacted, removal proceedings were considered criminal in nature. Even more important, unlike many similar statutory provisions, Section 203(a)(5) does not require that a person be convicted of a felony or other crime involving malfeasance in office; it requires that a person be "convicted of malfeasance in office" with no mention of a crime, and the word "convicted" is broad enough to include determinations of guilt in non-criminal proceedings. Moreover, the wording of Section 203(a)(5), its use of the term "malfeasance in office," and legislation contemporaneous to the initial enactment of the section's key language all point to the conclusion that Section 203(a)(5) uses the word "convicted" in a broad sense that includes convictions in removal proceedings.

Accordingly, we conclude that Smith's retirement did not moot the removal proceedings against her because the conviction in those proceedings bars her from serving on a jury. The judgment of removal is affirmed.

2

## I. BACKGROUND

### A. *Removal Proceedings*

Since at least 1872, California law has provided a process for removing local officials for willful or corrupt misconduct in office. (Pen. Code, former §§ 758-772.) This process, which is now in Government Code section 3060 et seq., borrows many elements of criminal procedure. It starts with an "accusation" issued by a grand jury against a district, county, or city officer "for willful or corrupt misconduct in office." (Gov. Code, § 3060.) Unless against the district attorney, the accusation is delivered to the district attorney (*id.,* § 3062), who serves it on the officer charged (*id.,* § 3063), and the officer is required to appear in court to answer the accusation (*id.,* § 3064). If the officer pleads guilty or refuses to answer, the trial court renders a "judgment of conviction" against the officer. (*Id,* § 3069.) If the officer denies the charges, there is a "trial . . . by a jury," which is "conducted in all respects in the same manner as the trial of an indictment." (*Id.,* § 3070.) Finally, "[u]pon a conviction" by the jury, the court pronounces judgment that the officer be removed from office. (*Id.,* § 3072.)

### B. *The Accusation*

In December 2021, a grand jury presented an accusation charging Smith with seven counts of misconduct in office. The first three counts concerned the Santa Clara County Sheriff's Office's handling of applications for licenses to carry concealed weapons. These counts allege, among other things, that Smith implemented a policy or practice of granting licenses only to "VIPs" such as campaign donors, members of the Sheriff's Advisory Board, prominent individuals in the community, and individuals with a personal connection to Smith. Smith also was charged with unlawfully accepting a gift of tickets to a suite at the SAP Center, failing to report the gift, and then failing to cooperate with an investigation by Santa Clara County officials.

Finally, and most pertinently here, Smith was charged with "willful and corrupt misconduct in office by committing the crime of Perjury, in violation of Penal Code

section 118." (Boldface omitted.) Specifically, the accusation charged that Smith certified under penalty of perjury that her 2019 Statement of Economic Interests disclosure (Form 700) was "true and complete" when she knew that this representation was false.

C. *The Trial*

Smith denied the charges against her, and after the trial court dismissed one count, the remaining six were tried to a jury. The trial began on September 30, 2020, and it continued for nearly a month, with testimony from more than 40 witnesses. Because the facts are immaterial to our legal analysis, we do not discuss the evidence.[1] Closing arguments were made, and final jury instructions given, on October 27, 2022. The jury began deliberations the next day, which was a Friday. The following Tuesday, November 1, 2022, the jury returned verdicts finding Smith guilty on all six remaining counts, including the perjury charge.

D. *Smith's Retirement*

On the morning of October 31, 2022, the Monday after the jury began deliberating, Smith retired. That same day, Smith orally moved to dismiss the removal proceedings on the ground that her retirement mooted the proceedings. The trial court ordered briefing and, after a hearing three days later, denied the motion.

Smith subsequently moved for a new trial, arguing again that the removal proceedings were moot and that the trial court had erred in denying her motion to dismiss. At oral argument, the court asked defense counsel whether the motion for a new trial, if granted on grounds of mootness, would entail another motion to dismiss for mootness. Defense counsel responded that the court's description was "a fair high-level summary." The trial court denied Smith's new trial motion and entered a judgment ordering her "forthwith removed" from the office of Santa Clara County Sheriff.

---

[1] For similar reasons, the People's request for judicial notice filed on August 7, 2023 is denied as moot.

4

Smith timely appealed.

## II. Discussion

Smith argues that her retirement mooted the removal proceedings and therefore the judgment of removal against her should be reversed.[2]  In particular, she contends that removal from office is the sole remedy available in removal proceedings, and therefore after retirement no effectual relief can be provided.  Reviewing this issue de novo (*K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174), we reach a different conclusion.  Although the judgment of removal here did not force Smith to relinquish office, it has at least one collateral consequence—it disqualifies her from serving on a trial jury—and therefore was not mooted by her retirement.

### A.     *The Collateral Consequences Doctrine*

"A case is considered moot when 'the question addressed was at one time a live issue in the case,' but has been deprived of life 'because of events occurring after the judicial process was initiated.' [Citation.]" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.)  Consequently, a case becomes moot, and should not proceed to formal judgment, if " ' "an event occurs which renders it impossible for [the] court . . . to grant [the plaintiff] any effectual relief . . . ." ' " (*Ibid*.)  However, a case does not become moot simply because it becomes impossible to grant the relief originally sought because a judgment may have " 'collateral consequences.' [Citation.]" (*People v. Ellison* (2003) 111 Cal.App.4th 1360, 1368-1369 (*Ellison*).)

For example, a criminal conviction does not become moot when the sentence imposed is completed if that sentence has collateral consequences such as exposing the

---

2  Although Smith's opening brief treats the denial of her motions to dismiss and for a new trial as two separate errors, her mootness argument applies equally to each, and she does not distinguish the legal principles applicable to the motions.  Accordingly, we treat them together.

defendant to future enhancements (*Ellison*, *supra*, 111 Cal.App.4th at p. 1369) or disabling the defendant from voting or serving as a juror (*Carafas v. LaVallee* (1968) 391 U.S. 234, 237-238). The same principle applies in civil cases. For example, expiration of a restraining order does not render the order moot if issuance of the order threatens the defendant's license to practice law. (*San Diego Police Department v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 564.)

Indeed, the Supreme Court has applied the collateral consequences doctrine in a case similar to this one. In *Kennick v. Commission on Judicial Performance* (1990) 50 Cal.3d 297, 309-313 (*Kennick*), disapproved on another ground in *Doan v. Commission on Judicial Performance* (1995) 11 Cal.4th 294, the Commission on Judicial Performance recommended removal of a judge based, among other things, on willful misconduct in office. (*Id.* at p. 307.) After the judge retired, he moved to dismiss, arguing that "his retirement has made this proceeding moot because [the Court] no longer can grant the relief sought by the commission, i.e., his removal from office." (*Id.* at p. 309.) The Supreme Court disagreed because removal from judicial office has collateral consequences such as rendering the judge ineligible for judicial office and suspending him from the practice of law. (*Ibid.* [discussing Cal. Const., art. VI, § 18, subd. (d)].) Although the judge offered to stipulate to his ineligibility for judicial office and to suspension from practice (*id.* at p. 311), the court concluded that the removal proceedings were not moot because, absent the judgment of removal, the judge could apply for reinstatement to practice law in the future, and the proceedings before the court would create a record of the reasons for suspension that could be used to evaluate such an application. (*Id.* at p. 312.)

B.    *Jury Eligibility*

The People argue that, just as the judge's retirement in *Kennick* did not moot the removal proceedings in that case because of removal's collateral consequences, Smith's retirement did not moot the removal proceedings here because her conviction for perjury

6

has collateral consequences. In particular, the People argue that this conviction bars her from serving as a trial juror, serving on a grand jury, holding public office, or running for elective office. We need consider only the first contention—that Smith's conviction for jury bars her from serving as a trial juror—which is supported by the literal language of Section 203(a)(5) and the removal proceeding statutes.

Code of Civil Procedure section 203 makes all persons presumptively eligible to serve as jurors. (See Code Civ. Proc., § 203, subd. (a) ["All persons are eligible and qualified to be prospective trial jurors . . . ."]; see also *id.*, § 203, subd. (b) ["No person shall be excluded from eligibility for jury service in the State of California, for any reason other than those reasons provided in this section."].)[3] However, the section excludes eleven categories of individuals from jury eligibility. (*Id.*, § 203, subds. (a)(1)-(a)(11).) Section 203(a)(5) contains one of these categories: "[p]ersons who have been convicted of malfeasance in office and whose civil rights have not been restored."

---

[3] Code of Civil Procedure section 203, subdivision (a) provides in full: "All persons are eligible and qualified to be prospective trial jurors, except the following: [¶] (1) Persons who are not citizens of the United States. [¶] (2) Persons who are less than 18 years of age. [¶] (3) Persons who are not domiciliaries of the State of California, as determined pursuant to Article 2 (commencing with Section 2020) of Chapter 1 of Division 2 of the Elections Code. [¶] (4) Persons who are not residents of the jurisdiction wherein they are summoned to serve. [¶] (5) Persons who have been convicted of malfeasance in office and whose civil rights have not been restored. [¶] (6) Persons who are not possessed of sufficient knowledge of the English language, provided that no person shall be deemed incompetent solely because of the loss of sight or hearing in any degree or other disability which impedes the person's ability to communicate or which impairs or interferes with the person's mobility. [¶] (7) Persons who are serving as grand or trial jurors in any court of this state. [¶] (8) Persons who are the subject of conservatorship. [¶] (9) Persons while they are incarcerated in any prison or jail. [¶] (10) Persons who have been convicted of a felony and are currently on parole, postrelease community supervision, felony probation, or mandated supervision for the conviction of a felony. [¶] (11) Persons who are currently required to register as a sex offender pursuant to Section 290 of the Penal Code based on a felony conviction."

(Section 203(a)(5).) Smith falls within the literal language of this category because she was convicted of perjury in connection with her official duties.

First, Smith was convicted in the removal proceedings. In such proceedings, findings of willful or corrupt misconduct are termed "convictions." If an officer accused of willful or corrupt misconduct in office pleads guilty to an accusation or refuses to answer it, the trial court renders a "judgment of *conviction*" against the officer. (Gov. Code, § 3069, italics added.) Even more important, if the officer pleads not guilty, a jury trial is conducted "in the same manner as the trial of an indictment"—including proof beyond a reasonable doubt—and a judgment of removal is rendered "[u]pon *conviction*" by the jury. (*Id.*, §§ 3070, 3072, italics added.) Accordingly, the judgment of removal rendered in this case begins by noting that Smith "ha[s] been *convicted* by jury." (Italics added.)

Second, Smith's conviction was for "malfeasance in office." The term "malfeasance in office" is not defined in any California statute. (*People ex rel. City of Commerce v. Argumedo* (2018) 28 Cal.App.5th 274, 281 (*Argumedo*).) However, "malfeasance" typically means "[m]isconduct or wrongdoing." (American Heritage Dict. (5th ed. 2011) p. 1062, col. 1 ["Misconduct or wrongdoing, especially by a public official."]; Webster's 3d New Internat. Dict. (1993) p. 1367, col. 1 ["WRONGDOING, MISCONDUCT, MISBEHAVIOR"]; Black's Law Dict. (11th ed. 2019) p. 1145, col. 2 ["A wrongful or unlawful act; esp., wrongdoing or misconduct by a public official."].) As a consequence, the term "malfeasance in office" is naturally understood to mean misconduct or wrongdoing by a public official while in office, at least where the conduct "evidences moral corruption and dishonesty." (*Argumedo*, *supra*, 28 Cal.App.5th at p. 281.)

Smith's conviction evidences moral corruption and dishonesty. She was accused and convicted, among other things, of "committing the crime of Perjury" by certifying that her annual ethical disclosures were true and complete when she knew that they were

8

not. Accordingly, the trial court instructed the jury on the elements of perjury under Penal Code section 118, including whether Smith knowingly and willfully stated under penalty of perjury that her annual disclosures were true and complete even though she knew that they were not. The jury also was instructed to presume Smith innocent and that the People had the burden of proving her guilty beyond a reasonable doubt. Nevertheless, the jury unanimously found Smith guilty of perjury, thereby determining that she had engaged in conduct evidencing moral corruption and dishonesty.

Consequently, under the literal language of Section 203(a)(5) and the removal statutes, Smith was convicted of malfeasance in office and therefore is barred from jury duty.

C.     *The Nature of Removal Proceedings*

Smith does not dispute that she was found guilty of malfeasance in office in the removal proceedings or that in making this finding the jury rendered what the removal proceeding statutes term a "conviction." Nonetheless, Smith denies that she was "convicted" for purposes of Section 203(a)(5) because, she asserts, removal proceedings are not criminal cases or prosecutions.

Removal proceedings employ many criminal procedures. They are commenced by a grand jury, albeit by "accusation" rather than indictment. (Gov. Code, § 3060). These accusations are prosecuted by district attorneys. (*Id.*, § 3063.) And trials in removal proceedings are conducted "by a jury . . . in all respects in the same manner as the trial of an indictment," including the presumption of innocence and the requirement of proof beyond a reasonable doubt. (*Id*., § 3070.) In addition, the Penal Code identifies the relief provided in a removal proceeding—removal from office (*id*., § 3072)—as a criminal punishment. (Pen. Code, § 15 ["A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed upon conviction, either of following punishments: [¶] . . . [¶] (4) Removal from office . . . ."].) Indeed, though the removal statutes are now found in Government Code

9

section 3060 et seq., they were originally placed in the 1872 Penal Code. However, unlike in a criminal case, no warrant is issued or bail posted after the grand jury presents an accusation in a removal proceeding. Instead, the accusation is served on the defendant (Gov. Code, § 3063), and the defendant submits an "answer" in response (*id.*, §§ 3064-3065). In addition, the misconduct alleged in an accusation need not be criminal, and if it is criminal, the resulting judgment does not bar subsequent prosecution for that crime. (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 411 (*Stark*); *In re Burleigh* (1904) 145 Cal. 35, 37 (*Burleigh*).)

Focusing on the criminal aspects of removal proceedings, Supreme Court decisions in the late nineteenth and early twentieth century repeatedly described removal proceedings as "criminal in nature." (*Coffey v. Superior Court of Sacramento County* (1905) 147 Cal. 525, 533 (*Coffey*); see also *People ex rel. Dorris v. McKamy* (1914) 168 Cal. 531, 533 ["That the proceeding is criminal can hardly be questioned."]; *Wheeler v. Donnell* (1896) 110 Cal. 655, 656 (*Wheeler*) ["That this proceeding is a criminal one, and in its nature a prosecution for a crime, is evident by every section of the Penal Code found in the chapter where this accusation is authorized."]; *Kilburn v. Lewis* (1896) 111 Cal. 237, 240 [describing removal proceedings as "a proceeding for the punishment of an offense in its nature criminal."].) Moreover, in one early case, the Supreme Court held that the dismissal of an accusation in a removal proceeding was not appealable under statutes governing appeals in civil case because "the proceeding is a criminal one." (*Wheeler*, *supra*, 110 Cal. at p. 656.) In another case, the Court held that a defendant could not be compelled to testify in a removal proceeding because a removal proceeding is not conducted to "establish, recover, or redress private and civil rights," but rather "to try and punish persons charged with the commission of public offense" and therefore is "a criminal case." (*Thurston v. Clark* (1895) 107 Cal. 285, 288.)

However, as Smith points out, more recent decisions have characterized removal proceedings differently. For example, a 1980 Court of Appeal decision ruled that, for

10

equal protection purposes, removal proceedings are "unlike felony criminal proceedings in that they protect a different public interest, are governed by separate and distinct procedures, and do not subject the accused to a fine or potential loss of liberty." (*People v. Superior Court* (1980) 110 Cal.App.3d 396, 400 (*Hanson*).)  Similarly, a 1997 Court of Appeal decision stated that "prosecution of an accusation under section 3060 et seq. is not a criminal proceeding." (*Bradley v. Lacy* (1997) 53 Cal.App.4th 883, 890 (*Bradley*).) And in 2011, the Supreme Court stated that a removal proceeding " 'is not a criminal prosecution' " because " 'its object is not to convict the defendant of a crime, but merely to remove him or her from office,' " and "acts which can be punished" by removal "are broader than behavior subject to criminal charges." (*Stark, supra*, 52 Cal.4th at p. 410, quoting 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Governmental Authority, § 109, p. 1201.)

It is not clear that we must choose between the earlier and more recent views concerning whether removal proceedings are criminal in nature—though it should be noted that statutory interpretation seeks " 'the true intent existing at the time the legislation.' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 724.)  Many statutes refer to persons convicted of a felony, misdemeanor, or just a crime.  (See, e.g., Code Civ. Proc., § 203, subd. (a)(10) ["Persons who have been convicted *of a felony*" (italics added)]; *id*., § 203, subd. (a)(11) ["Persons . . . required to register as a sex offender . . . based on a *felony* conviction" (italics added)]; Bus. & Prof. Code, § 6101, subd. (a) ["Conviction *of a felony or misdemeanor*, involving moral turpitude . . . ." (italics added)]; Elec. Code, § 20, subd. (a) [persons "*convicted of a felony* involving . . . any bribe, the embezzlement of public money, extortion, or theft of public money, [or] perjury" (italics added)]; Gov. Code, § 1021 ["conviction of designated *crimes*" (italics added)].)  Section 203(a)(5) does not.  It refers to persons "convicted of malfeasance in office" (Section 203(a)(5)), with no mention of a felony, misdemeanor, or crime.  This omission suggests that Section 203(a)(5) may extend to

11

convictions for malfeasance in office whether or not that malfeasance is criminal and, thus, in proceedings that are not criminal. As a consequence, we need to consider whether removal proceedings are criminal in nature only if Section 203(a)(5) requires that a person be convicted of a crime. We now turn to that question.

D.    *The Term "Convicted"*

In interpreting statutes such as Section 203(a)(5), our primary objective is to " 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849, quoting *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) "We look first to ' "the language of the statute, affording the words their ordinary and usual meaning and viewing them in their statutory context." ' " (*People v. Jimenez* (2020) 9 Cal.5th 53, 61.) Because "words used in a statute are not considered in isolation," we construe the language of a statute "in context" (*Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1158), which includes surrounding language and the statutory structure. (See, e.g., *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1246-1247 (*Weatherford*).) If after applying these tools the language of a statute remains " ' "ambiguous or subject to more than one interpretation," ' " courts " ' "may look to extrinsic aids, including legislative history or purpose." ' " (*Pulliam v. HNL Automotive Inc.* (2022) 13 Cal.5th 127, 137.) Finally, if after considering these additional matters uncertainty still remains, courts may consider " 'legislation upon the same subject, public policy, and contemporaneous construction.' " *(Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 141.)

Applying these considerations, we conclude that in Section 203(a)(5) the word "convicted" includes convictions for malfeasance of office in removal proceedings. The word "convicted" may be used in a broad sense that includes findings that an individual is guilty of an offense even if that offense is not criminal and the finding was not made in a criminal prosecution. In addition, the wording of Section 203(a)(5), its use of the term "malfeasance in office," and legislation contemporaneous to the initial adoption of the

section's key language all point to the conclusion that Section 203(a)(5) uses the word "convicted" in this broad sense and therefore covers convictions in removal proceedings.

### 1        Potential Meanings

Citing Black's Law Dictionary, the online Cambridge Dictionary, and two other sources, Smith notes that "the word 'convicted' commonly refers only to *criminal* cases." We agree that this is the ordinary way in which the word is now used. However, "convicted" also can be used in a broader sense. Leading American dictionaries define "convict" to mean "to find or declare guilty of an offense *or* a crime by the verdict or decision of a court or other authority." (Webster's 3d New Internat. Dict., *supra*, p. 1367, col. 1, italics added; see also American Heritage Dict., *supra*, p. 402, col. 1 ["To find or prove [someone] guilty of an offense *or* crime, especially by the verdict of a court" (italics added).].) In addition, the word "offense" is not limited to crimes: It encompasses any "infraction of the law" and even a "breach of moral or social conduct." (Webster's 3d New Internat. Dict., *supra*, p. 1566, col. 2; see also American Heritage Dict., *supra*, p. 1222, col. 2 [defining "offense" to mean, among other things, "[a] violation or infraction of a moral or social code" as well as "[a] transgression of law"]). As a consequence, the word "convict" may be used in a broad sense to refer to a finding that an individual is guilty of an offense. whether criminal or not.

For example, it is perfectly natural to say that a student found guilty of plagiarism or other violation of a university honor code was "convicted of Honor Code violations." (*Henson v. Honor Committee of U. Va.* (4th Cir. 1983) 719 F.2d 69, 71; *see also Atria v. Vanderbilt University* (6th Cir. 2005) 142 Fed. Appx. 246, 256 ["students convicted of Honor Code violations"]; *Cobb v. Rector and Visitors of the University of Virginia* (W.D. Va. 1999) 69 F.Supp.2d 815, 830 ["a disproportionate number of minority students are charged and convicted of honor violations"]; *Jansen v. Emory University* (N.D. Ga. 1977) 440 F.Supp. 1060, 1063 ["During Jansen's first and second years of dental school, he was charged and convicted of violations of the Emory Honor Code"]; *McAdoo v. University*

13

*of North Carolina at Chapel Hill* (N.C. App. 2013) 736 S.E.2d 811, 819 ["UNC later described how Plaintiff had only been convicted of one Honor Code violation"]; *Law v. William Marsh Rice University* (Tex. Ct. App. 2003) 123 S.W.3d 786, 789, fn. 3 [suspensions included in transcript if student is "convicted of two honor code violations"].)

The Legislature has used the word conviction in this broad sense. As mentioned above, the statutes governing removal proceedings state that, when a defendant pleads guilty to an accusation, "the court shall render judgment of *conviction*." (Gov. Code, § 3069, italics added.) The removal proceeding statutes also state that the trial court shall pronounce a judgment of removal "[u]pon a *conviction*" at trial. (*Id*., § 3072, italics added.) The statutes governing impeachment use conviction in this sense as well. They state that a defendant may be "*convicted* on impeachment" by a two-thirds vote of the Senate (*id*., § 3032, italics added), and require pronouncement of judgment "[a]fter *conviction*" (*id*., § 3033, italics added; see also *id*., § 3040 ["If the offense for which the defendant is *convicted* on impeachment is also the subject of an indictment or information, the indictment or information is not barred thereby." (italics added)].)

Thus, the term "convicted" can be—and in connection with removal proceedings has been—used in a broad sense that extends to findings that a party is guilty of an offense even if that offense is not criminal and, thus, the finding of guilt was not made in a criminal case or prosecution. Accordingly, consistent with the statutory language in Government Code section 3060 et seq., modern courts have continued to use "conviction" in describing a judgment of removal. (See, e.g., *Stark*, *supra*, 52 Cal.4th at p. 410; *Bradley*, *supra*, 53 Cal.App.4th at p. 888; *People v. Hawes* (1982) 129 Cal.App.3d 930, 938.)

### 2. The Wording of Section 203(a)(5)

When a word in a statute may be used in more than one sense, courts frequently look to the language accompanying the words to determine the sense intended by the

14

Legislature. (See, e.g., *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 960 [" 'the meaning of a word may be ascertained by reference to the meaning of other terms which Legislature has associated with it in the statute' "].) In Section 203(a)(5), the word "convicted" is part of a phrase, "convicted of malfeasance in office," which suggests that the Legislature intended to use the word in a broad sense not restricted to criminal offenses.

Section 203(a)(5) is worded differently than most statutes that contain the word "convicted." Most statutes containing the word "convicted" expressly restrict its application to convictions for crimes. The jury eligibility statute itself does this in two places. First, it bars from jury service persons "convicted *of a felony*" and currently on parole, postrelease supervision, probation, or mandated supervision "for the conviction of a felony." (Code Civ. Proc., § 203, subd. (a)(10), italics added.) Second, it bars persons required to register as sex offenders "based on a *felony* conviction." (*Id.,* § 203, subd. (a)(11), italics.) Section 203(a)(5) is worded differently. It is not expressly limited to convictions for crimes. Instead, it bars persons "convicted of malfeasance in office" with no mention of a felony or other crime.

This different wording cannot be explained by a desire to focus on convictions for malfeasance in office. Other statutes refer to individuals convicted of crimes involving specific types of misconduct. For example, the Election Code bars individuals from running or holding office if they have been "convicted *of a felony involving . . .* embezzlement of public money, extortion or theft of public money, perjury, or conspiracy to commit any of those crimes." (Elec. Code, § 20, subd. (a), italics added.) Similarly, the Government Code states that "[c]onviction *of a felony or misdemeanor, involving* moral turpitude, constitutes a cause of disbarment of suspension" of an attorney (Bus. & Prof. Code, § 6101, subd. (a), italics added), and it requires officers "convicted *of a crime involving* an abuse of his or her position" to reimburse any funds provided for their legal

15

defense (Gov. Code, § 53243.1, italics added).[4] Consequently, if the Legislature had intended to restrict Section 203(a)(5) to persons convicted of crimes, it could have done so easily and clearly by using the wording in other statutes and referring to persons convicted of *a felony, misdemeanor, or crime involving* malfeasance in office.

The Legislature's decision to word Section 203(a)(5) differently and to omit any reference to felonies, misdemeanors or crimes presumably was deliberate and intended to convey a different meaning. " 'Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning.' " (*Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1352.) Moreover, " '[i]t is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it another, it should not be implied where excluded.' " (*Brown v. Kelly Broadcasting Co*. (1989) 48 Cal.3d 711, 725.) As a consequence, it cannot be assumed that, even though Section 203(a)(5) does not explicitly require a conviction of a felony or other crime, the Legislature implicitly limited the section to persons convicted of crimes. To the contrary, it must be presumed that, by omitting any reference to crimes, the Legislature intended to use the word

---

[4] See also Financial Code section 6525.5, subdivision (a) (barring any person "convicted of any *criminal offense involving* dishonesty or breach of trust" from participating in conducting the affairs of a savings association (italics added)); Government Code section 53243 (requiring reimbursement of paid leave for officers "convicted of *a crime involving* an abuse of his or her office" (italics added)); Health and Safety Code section 11714, subdivision (b) (tolling statute of limitations when a potential defendant is "convicted *of a criminal offense involving* an illegal controlled substance" (italics added)); Welfare and Institutions Code section 4648.12, subdivision (b) (referring to individuals "convicted *of any felony or misdemeanor* involving fraud or abuse in any government program" (italics added)); Vehicle Code section 11110.7, subdivision (a) (authorizing denial of license to applicants "convicted *of a crime involving* moral turpitude which is substantially relating to the qualifications, functions, or duties of the licensed activity" (italics added)).

"convicted" in its broad sense and to extend Section 203(a)(5) to persons convicted of offenses that are not criminal.

### 3. The Term "Malfeasance in Office"

The conclusion that Section 203(a)(5) uses the word "convicted" in its broad sense and extends to offenses that are not criminal is supported by the section's use of the term "malfeasance in office," which is not limited to criminal conduct.

As noted earlier, "malfeasance" is ordinarily understood to mean "[m]isconduct or wrongdoing" in general, not just wrongdoing that rises to the level of a crime. (American Heritage Dict., *supra*, p. 1062, col. 1; Webster's 3d New Internat. Dict., *supra*, p. 1367, col. 1.) Indeed, the Legislature frequently uses the term "malfeasance in office" to refer to wrongdoing that that may not be criminal. For example, Revenue and Tax Code section 1365, which prohibits county assessors and assessor office employees from engaging in any business activity "incompatible or involves a conflict of interest with their duties," states that a violation of these requirements "shall constitute malfeasance in office on the part of the assessor." (Rev. & Tax. Code, § 1365, subd. (a), (b).) As engaging in "incompatible" business activities does not always rise to the level of a crime, this provision uses the term malfeasance in office to refer to misconduct that may not be criminal. Other statutes grant the Governor and other executive branch officials power to remove appointees for malfeasance in office[5] or make contracting officers

---

[5] See, e.g., Food and Agricultural Code section 62307 ("The director may remove any member from a local or regional advisory board if he finds, after a hearing, that such a member is guilty of nonfeasance or malfeasance in office."); Government Code section 3541, subdivision (a) ("A member of the [Public Employment Relationship Board] may be removed by the Governor upon notice and hearing for neglect of duty or malfeasance in office, but for no other cause."); Labor Code section 1141, subdivision (b) ("Any member of the [Agricultural Labor Relations Board] may be removed by the Governor, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.").

17

personally liable for money paid as a result of malfeasance in office.[6] Presumably, these statutes are not limited to criminal conduct either.

In addition, decisions from other states recognize that the term "malfeasance in office" includes misconduct that is not criminal. For example, the Utah Supreme Court has held that the " 'commonly understood' " meaning of malfeasance in office includes not only intentional conduct that "amounts to a crime," but also conduct that " 'involves a substantial breach of the trust imposed upon the official by the nature of his office, and. . . is of such a character as to offend against the commonly accepted standards of honesty and morality.' " (*Madsen v. Brown* (Utah 1985) 701 P.2d 1086, 1090, quoting *State v. Geurts* (1961) 11 Utah 2d 345, 348.) Decisions from other states similarly recognize that "malfeasance in office" does not require a showing "that the act is criminal or corrupt in nature." (*Daugherty v. Ellis* (1956) 142 W.Va. 340, 357-358; see *Warren v. Commonwealth* (1923) 136 Va. 573, 586 [removal for malfeasance in office does not require any corrupt or evil intention]; *State ex rel. Attorney General v. Lazarus* (1887) 39 La.Ann. 142, 160 [removal for malfeasance in office does not require proof that the misconduct charged was criminal].)

Especially absent the express references to crimes in other statutory provisions using the word "convicted," Section 203(a)(5)'s use of a term ("malfeasance in office") that encompasses noncriminal misconduct supports the conclusion that the section uses the word "convicted" in a broad sense and therefore is not limited to convictions for offenses that are criminal.

---

[6] See, e.g., Education Code, section 17605 ("In the event of malfeasance in office, the district officer or employee invested by the governing power with the power to contract shall be personally liable for any and all moneys of the district paid out as a result of the malfeasance."); *id*., section 81656 (In the event of malfeasance in office, the community college district officer or employee invested by the governing board with the power to contract shall be personally liable for any and all moneys of the district paid out as a result of the malfeasance.").

4.      Contemporaneous Legislation

This conclusion is also supported by legislation contemporaneous to the adoption of the language of Section 203(a)(5), which used the word "convicted" in a broad sense to refer to non-criminal matters and, indeed, to findings of malfeasance in office in removal proceedings.

The original removal and impeachment statutes were enacted in 1872, less than ten years before former Code of Civil Procedure section 199 (Former Section 199), which first enacted the language barring from jury service persons "convicted of malfeasance in office." (Former Code Civ. Proc., § 199, subd. (b); Stats. 1880, Code Amends. 1880, ch. 35, § 1, p. 45.) Like the current removal proceedings statutes, the 1872 removal proceedings statutes provided for a "judgment of conviction" if the defendant pleaded guilty or refused to answer an accusation (Pen. Code, former § 766) or, where the defendant went to trial, for a judgment of removal "[u]pon a conviction." (Pen. Code, former § 769.) Similarly, the 1872 impeachment statutes provided for a "judgment of conviction" if the defendant plead guilty (Pen. Code, former § 744) or, where the defendant went to trial, for a judgment "[a]fter conviction." (Pen. Code, former § 747.) As neither removal nor impeachment proceedings are criminal proceedings in the conventional manner, these statutes show that less than a decade before the language currently in Section 203(a)(5) was first adopted in 1880, the Legislature used the word "conviction" in a broad sense that extended beyond such criminal proceedings and applied to removal proceedings—which makes it reasonable to infer that the Legislature used the word "convicted" in the same sense in Former Section 199 and, by extension, Section 203(a)(5). (See Code Civ. Proc., § 5 ["The provisions of this Code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments."].)

Even more pertinent, in 1881, only a year after Former Section 199 was enacted, the Legislature used the word "conviction" to refer to a finding of malfeasance in office

19

in a removal proceeding. In that year, the Legislature enacted legislation concerning water rates, imposing an "official duty" upon municipalities to fix water rates, which were "equal and uniform" and with "no discriminations," (Stats. 1881, ch. 52, § 1, p. 55; *id*., § 6, p. 56), and to require statements from water suppliers concerning the water they provided. (Stats. 1881, ch. 52, § 2, p. 55; *id*., § 5, pp. 55-56.) This legislation deemed failure to perform these duties "malfeasance in office" and provided for removal from office "upon conviction" of such malfeasance: "Any Board Of Supervisors or other legislative body of any city and county, city, or town, which shall fail or refuse to perform any of the duties prescribed by this Act at the time and in the manner hereinbefore specified, shall be deemed guilty of *malfeasance in office*, and, upon *conviction* thereof at the suit of any interested party in any court of competent jurisdiction, shall be removed from office." (Stats. 1881, ch. 52, § 8, p. 56, italics added; see also *Morton v. Broderick* (1897) 118 Cal. 474, 482 [observing that the legislation "designates the failure to fix rates as 'malfeasance'" and provides for removal from office "upon 'conviction'"].) As the failure or refusal to fix water rates or to require disclosures is not criminal, this legislation plainly used the word conviction in its broad sense and applied that sense to findings of malfeasance in office that is not criminal in a removal proceeding.

It is likely that in 1880, when the Legislature enacted Former Section 199 barring individuals "convicted of malfeasance in office" from serving on juries, it used the term "convicted" in the same sense and likewise intended to include determinations of both criminal and noncriminal malfeasance in office in removal proceedings. Thus, like the wording of Section 203(a)(5) and the use of the term of "malfeasance in office," legislation contemporaneous to the adoption of the language now in Section 203(a)(5) supports the conclusion that the section uses the term "convicted" in a broad sense that includes determinations of both criminal and noncriminal malfeasance in office.

### 5. Smith's arguments

Smith fails to offer any persuasive reason to adopt a contrary interpretation of Section 203(a)(5).

#### a. Restoration of Civil Rights

Other than noting the ordinary definition of "convicted," Smith makes only one argument concerning the language of Section 203(a)(5): Pointing to the exception now at the end of the section for persons " 'whose civil rights have not been restored,' " Smith asserts that Section 203(a)(5) should be interpreted to apply "only to a felony conviction." We are not persuaded.

Smith assumes that only felons may have their civil rights restored. That is incorrect. As Smith points out, only "a person convicted of a felony" may petition for a certificate of rehabilitation and pardon (Pen. Code, § 4852.01., subd. (a)) and thereby seek clemency through the courts (*id.*, §§ 4852.1-4852.14). There is, however, another way to restore civil rights: An individual may seek a pardon or other clemency directly from the Governor, and this avenue is not restricted to felons. (*Id.,* §§ 4800-4813.)

Even more fundamentally, there is no reason to restrict Section 203(a)(5) to the scope of its exception. The provision in Section 203(a)(5) for persons whose civil rights have been restored effectively creates an exception to the section's general rule barring person convicted of malfeasance in office from serving on juries. Smith fails to explain why this general rule should extend only to individuals who potentially fall within the exception, and we see none. The Legislature simply may have decided to create an exception that potentially benefits only some of those covered by Section 203(a)(5)'s general rule.

Moreover, the civil rights restoration exception was not added to the jury eligibility statute until 1988, when Code of Civil Procedure section 203 was enacted. (Stats. 1988, ch. 1245, § 2, p. 4144.) As a consequence, the exception could not have restricted the scope of the jury eligibility statute before then, and it is unlikely that the

21

Legislature would have restricted the general rule in Section 203(a)(5) implicitly and without any express statement by adding an exception. As the Supreme Court repeatedly has observed, " ' "[t]he Legislature 'does not . . . hide elephants in mouseholes.' " ' " (*Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1135, quoting *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1171.)

b.     The Purpose of Removal Proceedings

Smith points out that removal proceedings have a different purpose than criminal proceedings. That is true: Unlike a criminal case, the purpose of a removal proceeding is not to impose a sentence or fine; instead, the purpose of a removal proceeding is "to remove unworthy and unfaithful officials during their current term in office." (*Hanson*, *supra*, 110 Cal.App.3d at p. 401.) But Smith fails to explain how this distinction makes a difference. The Penal Code identifies removal from office, as well as imprisonment and fines, as criminal punishment: Under section 15 of the Penal Code, "[a] crime or public office is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: [¶] 1. Death; [¶] 2. Imprisonment; [¶] 3.Fine; [¶] *Removal from office*; or, [¶] Disqualification to hold and enjoy any office of honor, trust, or profit in this State." (Italics added.)

Even more important, convictions in removal proceedings are just as reliable as convictions in criminal prosecutions because removal proceedings employ largely the same procedures as criminal prosecutions. Removal proceedings are commenced by a grand jury. (Gov. Code, § 3060.) In addition, if an accused official pleads not guilty in a removal proceeding, the official receives a "trial . . . by a jury," which is "conducted in all respects in the same manner as the trial of an indictment" (*id*., § 3070)—including the presumption of innocence and the requirement of proof beyond a reasonable doubt. We see no reason to treat a jury verdict of guilty in a removal proceeding with any less respect than a jury verdict in a felony prosecution.

This is not to say that there are no differences between removal proceedings and criminal prosecutions. As Smith points out, a defendant in a removal proceeding has no right to a preliminary hearing. (See *Hanson*, *supra*, 110 Cal.App.3d at p. 401.) But since a 1990 initiative measure, a criminal defendant who is the subject of a grand jury indictment does not have the right to a preliminary hearing either. (See *Bowens v. Superior Court* (1991) 1 Cal.4th 36, 39 ["a defendant indicted in California is no longer entitled to, and indeed may not be afforded, a postindictment preliminary hearing or any other similar procedure"].) There are, of course, other differences between removal proceedings and criminal prosecutions. As mentioned above, the "acts which can be punished under [removal proceedings] are broader than the behavior subject to criminal charges" (*Stark*, *supra*, 52 Cal.4th at p. 411), and judgments in removal proceedings may not bar subsequent criminal prosecutions. (*Burleigh*, *supra*, 145 Cal.35, 37.) But these differences do not impact the reliability of jury verdicts in removal proceedings, and we see no reason to treat verdicts in such proceedings differently from verdicts in criminal cases.

c.    The Right to Serve on Juries

Smith also contends that any doubts concerning the application of Section 203(a)(5) to removal proceedings should be "resolved in favor of the right to serve on juries," which Smith asserted at oral argument is "sacrosanct." Here again, Smith's contention is based on a faulty premise. "Serving as a juror is not a fundamental right . . . ." (*Doe v. Finke* (2022) 86 Cal.App.5th 913, 922; see also *United States v. Conant* (E.D. Wis. 2000) 116 F.Supp.2d 1015, 1020 ["No court that has considered the question of whether being eligible for jury service is a constitutional right has answered in the affirmative."].) As the California Supreme Court observed a half century ago, "[w]hile trial by jury is constitutionally implanted in our system of justice, an individual's interest in serving on a jury cannot be held a fundamental right." (*Adams v. Superior Court* (1974) 12 Cal.3d 55, 61; see also *Rubio v. Superior Court* (1979) 24 Cal.3d 93,

23

101 ["the exclusion [from a jury] does not violate equal protection if it has any rational relationship to some legitimate state objective"].)

In addition, Smith's suggestion that doubts should be resolved in favor of eligibility to serve ignores the important interests served by excluding individuals convicted of malfeasance in office from juries. To protect the integrity and fairness of jury trials, we decline to place a thumb on the scale in favor of public officials whom a jury has found beyond a reasonable doubt to have committed malfeasance in office.

### d.        Impact on Removal

Smith's final argument is that Section 203(a)(5) should not be interpreted to include convictions in removal proceedings because doing so would undermine the efficacy of removal proceedings. According to Smith, juries in removal proceedings would be less willing to convict public officials of misconduct if they knew that the officials would suffer collateral consequences such as disqualification from jury service. Smith offers no evidence or other support for this assertion, and the People—who are responsible for trying removal cases—do not share her concern. This comes as no surprise. It is "fundamental law in California that the trier of fact is not to consider the subject of penalty or punishment in arriving at its decision of guilt or innocence." (*People v. Moore* (1985) 166 Cal.App.3d 540, 549; see also *ibid*. ["The issue of punishment being a question of law is exclusive to the court and therefore extraneous to the jury."].) As a consequence, any danger that juries in removal proceedings may consider the collateral consequences of a conviction can be dealt with easily and effectively by instructing the jury not to do so. Indeed, in Smith's trial the jury was instructed that "[y]ou must reach your verdict without any consideration of punishment."

### 6.        Conclusion

Although the word "convicted" is ordinarily used to refer to determinations in criminal cases, Section 203(a)(5) uses it in a broader sense that encompasses determinations of any offense, whether criminal or not. The wording of Section

24

203(a)(5), which, unlike many other provisions dealing with convictions, does not refer to convictions of felonies, misdemeanors, or other crimes; the use of a term—"malfeasance in office"—that includes both criminal and noncriminal misconduct; legislation contemporaneous to the enactment of the initial jury eligibility statute; and the subsequent history of the statute all support the conclusion that Section 203(a)(5) uses the term "convicted" in this broader sense. Moreover, Smith has failed to offer any persuasive argument for adopting a contrary interpretation. We therefore conclude that Section 203(a)(5) applies to Smith's perjury conviction in this case, which means that the judgment against her has at least one collateral consequence and is not moot.

### III. DISPOSITION

The judgment is affirmed.

_____
BROMBERG, J.

WE CONCUR:

_____
GROVER, ACTING P. J.

_____
LIE, J.

H050653
*People v. Smith*

| | |
|---|---|
| Trial Court: | Santa Clara County<br>Superior Court No.: 21CV391905 |
| Trial Judge: | The Honorable Nancy Fineman |
| Attorney for Defendant and Appellant<br>Laurie Smith: | Moskovitz Appellate Team<br>Myron Moskovitz<br>David A. Kaiser |
| Attorneys for Plaintiff and Respondent<br>The People: | Brooke Jenkins,<br>District Attorney |
| | Matthew L. McCarthy,<br>Assistant Chief District Attorney |
| | Daniel Amador,<br>Managing Attorney |
| | Erin Loback,<br>Assistant District Attorney |

H050653
*People v. Smith*